Queenie **MITCHELL, Plaintiff–Appellee,**

v.

**Deborah CARLSON and United States of America, Defendants–Appellants.**

Queenie **MITCHELL, Plaintiff–Appellee,**

v.

**Deborah CARLSON, Individually, Defendant–Appellant.**

**In re UNITED STATES of America and Deborah Carlson, Petitioners.**

**Nos. 89–1377, 89–1516 and 89–1653.**

United States Court of Appeals, Fifth Circuit.

March 15, 1990.

Helen M. Eversberg, U.S. Atty., San Antonio, Tex., Scott R. McIntosh, Dept. of Justice, Barbara L. Herwig, Appellate Staff, Civil Div., Washington, D.C., for defendants-appellants.

John R. Ker, Hewitt, Tex., for plaintiff-appellee.

Before GARZA, WILLIAMS and DAVIS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

This appeal presents two issues: (1) whether this Court has jurisdiction to review a district court order that re-substituted parties and remanded the case to state court; and (2) whether the re-substitution order was in error under the Federal Employees Liability Reform and Tort Compen-

sation Act of 1988, Pub.L. No. 100–694 (November 18, 1988), commonly known as the Westfall Act.

## I. *Facts and Prior Proceedings*

This case [1] arose out of an altercation between appellee Queenie Mitchell and appellant Major Deborah Carlson. Mitchell is a nurse assistant at Darnell Community Hospital, a federal military facility in Killeen, Texas. Carlson, Mitchell's supervisor, is a nurse-midwife there. On June 11, 1986, during a heated work-related conversation in which Carlson confronted and accused Mitchell of mishandling patients' records, Carlson allegedly struck Mitchell.

In June 1988, Mitchell sued Carlson in her individual capacity in Texas state court, claiming common law tortious assault and battery. One month later Carlson removed the case to federal court, pursuant to 28 U.S.C. § 1442(a), which authorizes military personnel to remove any suit against them based on acts done under color of federal office or status. *See* 28 U.S.C. § 1442(a).

On November 18, 1988, the Westfall Act became effective. The Act amended several provisions of the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671, *et seq.*, in order to ensure that federal employees remain immune from liability for wrongful acts occurring in the course and scope of their employment. Section 2, Westfall Act. To further its purpose, Congress established three specific procedures in the Act. First, upon the initiation of suit against a federal employee, the employee may seek certification by the United States Attorney General that he or she acted in the scope and course of employment. Second, if the suit was filed in state court, upon certification the case shall then be removed to federal court. Finally, once the case is in federal court, the federal district court is required to substitute the United States as defendant in place of the federal employee, and the case proceeds "in the same manner as any action against the United States", i.e. as a claim under the Federal Tort Claims Act. Section 6 of the

Westfall Act, *amending* 28 U.S.C. § 2679(d).

On January 10, 1989, in accordance with the above amendments, and with the case already having been removed to federal court, the United States Attorney for the Western District of Texas certified that Carlson had acted within the scope of her employment. The United States then filed a Notice of Substitution and Application for Order with the district court. As required by the Westfall Act, on January 30, 1989, the district court entered an Order dismissing Carlson, substituting the United States as the proper defendant, and ordering the case to proceed under the FTCA.

The United States then filed a motion to dismiss the suit on the ground that the federal district court lacked subject matter jurisdiction because of Mitchell's failure to file an administrative claim with the Department of the Army as required by the FTCA, 28 U.S.C. § 2675(a).

On April 6, 1989, 709 F.Supp. 767, the district court entered an Order dismissing the United States as party defendant, but not for the reasons presented in the United States' Motion to Dismiss. The court based its dismissal on its own motion pursuant to another provision of the FTCA, which expressly excludes government liability for any claim arising out of assault or battery. *See* 28 U.S.C. § 2680(h). Since the United States government had not waived its sovereign immunity with regard to claims of assault and battery, the district court concluded that it lacked subject matter jurisdiction to hear Mitchell's case, and thus dismissed the United States. In the same order, the district court also vacated its previous Order that substituted the U.S. for Mitchell, resubstituted Carlson as defendant, and remanded the case to state court.

On Carlson's behalf, the United States removed the case from state court again, pursuant both to 28 U.S.C. § 1442(a), the removal statute applicable to military personnel previously relied on by Mitchell, and 28 U.S.C. § 2679(d)(2), the removal provision in the Westfall Act. The United

---

**1.** This appeal addresses three consolidated cases, 89–1377, 89–1516, and 89–1653.

States also requested that the district court hold any further proceedings in abeyance until this Court could review the previous order. On May 4, 1989, however, the district court once again, without further opinion, remanded the case to state court.

The United States and Carlson appeal from the two district court orders, and, in the alternative, request a writ of mandamus directing the district court judge to vacate his previous orders.

## II. *Jurisdiction*

The critical issue we face in this appeal is whether we have jurisdiction to review the district court's orders. Federal law clearly precludes us from reviewing the district court's two orders for remand to the state court for lack of jurisdiction. 28 U.S.C. § 1447(d); *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976); *Richards v. Federated Department Stores, Inc.*, 812 F.2d 211 (5th Cir.1987). Section 1447(d) states:

Section 1447. Procedure after removal generally.

... (d) An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise....

28 U.S.C. § 1447(d). This section applies to review by mandamus as well as appeal. *Gravitt v. Southwestern Bell Telephone Co.*, 430 U.S. 723, 97 S.Ct. 1439, 52 L.Ed.2d 1 (1977).

■ Contrary to the assertions of appellant, we must hold that Westfall Act claims are subject to the limitations of this section. Section 1447(d) applies to all remands for lack of jurisdiction pursuant to

§ 1447(c). The Westfall Act contains no provision expressly or by implication excepting it from the operations of §§ 1447(c) or (d).

Appellants rely upon the Westfall Act's effective repeal of the provision in the FTCA, 28 U.S.C. § 2679(d) (1982 & Supp. V 1987), authorizing a district court to remand a case to state court if it found that the employee acted outside the scope of employment. Appellants assert that this repealed provision is persuasive evidence that Congress intended to deny district courts the power to remand a Westfall Act case, regardless of the reason, once the Attorney General has issued certification. This contention is unpersuasive. Congress repealed the provision in order to give the new certification procedure conclusive effect on the issue of whether the employee acted within the scope of employment. There is no evidence, however, that the act of repeal implicated or affected the authority of the district court to order remand for reasons wholly unrelated to the scope certification.[2]

There is no provision in the statute yielding any indication that Congress intended to deny federal courts the power to order remand for reasons other than those related to the course of employment certification, or to grant this Court the power to review, on appeal or otherwise, orders of remand for lack of jurisdiction in a Westfall Act case. We, therefore, must adhere to the broad application of § 1447(d). We must conclude that we are barred by § 1447(d) from reviewing on appeal or otherwise orders of remand for lack of jurisdiction in a Westfall Act case.[3]

---

2. As a corollary to its act of repeal, Congress provided in the Westfall Act that in cases in which the Attorney General has *not* issued certification the district court retains its previously held power to remand a case to state court if it finds that the employee acted outside the scope of his employment. *See* 28 U.S.C. § 2679(d)(3). Contrary to the suggestion of appellants, however, this provision does not give any indication that Congress left the court without the power to remand for lack of jurisdiction in cases in which the Attorney General *has* issued a certification.

3. Appellants additionally contend that § 1447(d) does not apply to this case because (1) the remand order was predicated on non-jurisdictional grounds, and (2) the remand order was issued after final judgment.

Appellants assert that the district court did not base its order of remand on jurisdictional grounds. If not, then § 1447(d) does not operate to bar this court from review of the remand order. *Thermtron, supra*, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542. The record is clear, however, that the district court based its actions upon its conclusion that it lacked jurisdiction over the case. The district court expressly stat-

■ We find, however, that this Court does have appellate jurisdiction to review the portion of the district court's April 6 decision and order, separable from the remand portion, that vacated its previous order substituting the United States for Carlson and resubstituted Carlson as defendant. *See City of Waco v. United States Fidelity & Guaranty Co.*, 293 U.S. 140, 55 S.Ct. 6, 79 L.Ed. 244 (1934); *In re Adams*, 809 F.2d 1187 (5th Cir.1987).

Recently, this Court addressed an analogous situation in *In re Adams, supra*, 809 F.2d 1187. In that case, the state court was ousted of jurisdiction over the litigation when the case was removed to federal bankruptcy court under Chapter 13 of the Bankruptcy Code in Louisiana. Consequently, plaintiffs voluntarily dismissed their state court action based upon their erroneous assumption that they could obtain a remedy in bankruptcy. Upon realizing their error, the plaintiffs then requested the federal bankruptcy court to "reinstate" their suit. The court obligingly entered an order reinstating the case. The defendant appealed from the bankruptcy court's order of reinstatement to the district court, which entered an order dismissing the appeal and remanding the litigation to state court. Defendant then appealed the district court's order to this Court.

On appeal, this Court recognized that it could not review the remand order.[4] But we held, nonetheless, that the district court's decision to dismiss the appeal and uphold the bankruptcy court's "reinstate-

ment" of plaintiff's suit necessarily preceded the remand order and thus was separable from it. "[T]he district court would have had nothing to remand if it had overturned the bankruptcy court's reinstatement order and enforced the attempted voluntary non-suit: there would have been no pending adversary proceeding in that event." *In re Adams, supra*, 809 F.2d at 1189. We held, therefore, that the dismissal, which preceded the order for remand and was separable from it, was subject to review.

In support of its conclusion, the *Adams* court cited *City of Waco v. United States Fidelity & Guaranty Co., supra*, 293 U.S. at 143, 55 S.Ct. at 7, in which the Supreme Court held that the appellate court could not review a district court's decree remanding the case to state court, but it could review the dismissal of a cross-claim which had served as the basis for removal. The Court said:

> True, no appeal lies from the order of remand; but in logic and in fact the decree of dismissal preceded that of remand and was made by the District Court while it had control of the cause. . . .
> We are of the opinion that the petitioner was entitled to have the Circuit Court of Appeals determine whether the dismissal of its cross-action against the Fidelity Company was proper.

*Waco, supra*, 293 U.S. at 143, 55 S.Ct. at 7.

Under these holdings, the resubstitution order in the present case is separable from

---

ed that the case was remanded because it originally was removed "improvidently and without jurisdiction". *See Thermtron, supra*, 423 U.S. at 343, 96 S.Ct. at 589; *Richards v. Federated Dept. Stores, Inc., supra*, 812 F.2d at 211 ("orders which recite the magic words [improvidently and without jurisdiction] ... are 'not subject to challenge in the court of appeals by appeal, by mandamus or otherwise' ").

It is irrelevant to the issue of the right to appeal whether the court was correct or not in its determination that the removals were without jurisdiction. *See, e.g., Gravitt v. Southwestern Bell Co., supra*, 430 U.S. 723, 97 S.Ct. 1439, 52 L.Ed.2d 1 (1977). We note, however, that the district court's determination was incorrect. Carlson originally removed the case under 28 U.S.C. § 1442(a), a provision granting military personnel the right of removal separate and apart from the Westfall Act and the FTCA. Ad-

ditionally, the second removal was based squarely upon both § 1442(a) and the removal provision in the Westfall Act itself, which requires that the Attorney General *"shall"* remove the case upon certification. Both removals were proper.

Finally, it is also clear that the district court did not render final judgment in the case prior to issuing its order for remand. It merely resubstituted party defendants before remanding to the state court.

**4.** The court found the remand order was not reviewable pursuant to 28 U.S.C. § 1452(b), which applies to the removal and remand of cases related to bankruptcy. While this case involves the more general provision in 28 U.S.C. § 1447(d), the substance of the two provisions is the same.

the remand order and may be subject to review on appeal. The district court dismissed the United States as a defendant and resubstituted Carlson while it still had control of the cause. Only then did the court remand the case to state court. As in *In re Adams*, if the district court had not resubstituted Carlson but had only dismissed the case against the United States, there would have been no case left to remand to state court. Thus, the resubstitution order being prior to and separable from the remand order, § 1447(d) does not bar us from review of the resubstitution order.[5]

Before concluding we have the power to review the district court's resubstitution order, however, we must determine whether the order is reviewable by appeal under 28 U.S.C. § 1291. Section 1291 vests this Court with jurisdiction over final decisions of the district courts. Generally, a resubstitution order is not considered a final decision, as it merely substitutes one party for another in on-going litigation. We hold, however, that this resubstitution order is reviewable under the "collateral order doctrine".

> The collateral order doctrine embraces that small class [of decisions] which finally determine claims of right separable from, and collateral to, rights asserted in an action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.

*Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949).

The doctrine extends to government employees the right of immediate appeal under § 1291 from orders denying them absolute or qualified immunity. *See Mitchell v.*

*Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). In *Mitchell*, the Supreme Court determined that a government employee's right to appeal as a collateral order extends not only to claims of absolute immunity but also to claims of qualified immunity. "The entitlement [of qualified immunity] is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell, supra*, 472 U.S. at 526, 105 S.Ct. at 2815. As this Court subsequently has held, "[t]o not allow an appeal from a district court's denial of a claim of immunity would effectively defeat the immunity entitlement." *Schaper v. City of Huntsville*, 813 F.2d 709, 713 (5th Cir. 1987).

■ The district court's order resubstituting Carlson as defendant effectively denied Carlson immunity from suit if she was entitled to such immunity under the Westfall Act. Under the Act, once the United States Attorney certifies that the federal employee acted within the scope of her employment, the plaintiff properly can proceed only against the United States as defendant. The federal employee remains immune from suit. By reviving the suit against her, the district court subjected Carlson to the burden of defending a suit in state court, a burden from which she is entitled to be immune.

We conclude, therefore, that under § 1291, pursuant to the authority recognized in *Mitchell*, we have jurisdiction to review on appeal the district court's order of resubstitution because the order raises the issue of whether it constitutes a denial of the immunity granted federal employees by the Westfall Act. We need not consider, therefore, the issue of whether we also

---

**5.** Although it does not provide binding precedent in this Circuit, the Second Circuit case of *Hirsch v. Bruchhausen*, 284 F.2d 783 (2d Cir. 1960), further supports our conclusion. In *Hirsch*, the defendant corporation removed a state court action to federal court under diversity jurisdiction. Once in federal court, plaintiffs sought to substitute various individuals as party defendants in place of the corporation. The district court granted the plaintiffs' motion for substitution, and then remanded the case to state court for lack of diversity jurisdiction. Although the court recognized that it could not review the remand order by virtue of § 1447(d), it nonetheless proceeded to review the order of substitution that preceded the remand order. *Id.*

have the authority to review the resubstitution order by writ of mandamus.

Accordingly, we hold that the district court's April 6 order, to the extent it dismissed the United States as a defendant and resubstituted Carlson as defendant, is subject to review on appeal by this Court.

### III. *The Resubstitution Order*

We now reach the merits of appellant's attack on the district court's order dismissing the United States and resubstituting Carlson as defendant based upon its interpretation of the Westfall Act.

In its April 6 memorandum opinion, the district court correctly recognized that under the Act, the United States is substituted as defendant and the suit proceeds like any other suit under the Federal Tort Claims Act once a defendant federal employee is certified as acting within the course and scope of his or her employment. In order for plaintiff to recover from the United States, he or she must have a claim otherwise cognizable against the United States under the FTCA.

The FTCA, however, does not provide for recovery for assault and battery. 28 U.S.C. § 2680(h). Because the government has not waived its sovereign immunity for such acts, the district court correctly concluded that it lacked subject matter jurisdiction to hear the case and was required to dismiss it. But the court erred in concluding that the case originally was removed "improvidently and without jurisdiction". Carlson properly had removed the case under a statutory provision benefitting military personnel, 28 U.S.C. § 1442(a), one completely unrelated to the Westfall Act.

■ Based upon its own correct analysis, the district court then should have dismissed the suit entirely for lack of jurisdiction. Instead, it dismissed the United States as party defendant, resubstituted Carlson as party defendant, and remanded the case to the state court from whence it came. The court erroneously relied upon its determination that the original removal from state court was without jurisdiction and therefore required remand. The court apparently was motivated by a desire to provide plaintiff Mitchell with a possible remedy. But the mandate in § 5 of the Westfall Act is clear. An action against a federal employee who has been certified as acting in the scope of her employment must proceed *exclusively* against the United States under the FTCA, a fact which the court itself recognized in its original substitution order of January 30, 1989. We must accept the clear mandate of the law. Since there is no remedy for assault and battery in the FTCA, Congress intended to leave a plaintiff such as Mitchell without a remedy for injuries sustained as a result of a federal employee's alleged assault and battery while in course of employment.

The Westfall Act provides:

The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is *exclusive* of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. *Any other civil action* or proceeding for money damages arising out of or relating to the same subject matter *against the employee* or the employee's estate *is precluded* without regard to when the act or omission occurred.

Section 5 of the Westfall Act, *amending* 28 U.S.C. 2679(b) (emphasis added). The basic purpose of the Westfall Act was to "protect federal employees from personal liability for common law torts committed within the scope of their employment, while providing persons injured by the common law torts of federal employees with an appropriate remedy against the United States." § 2, Westfall Act.

Congress did provide plaintiffs with a substitute remedy against the United States, but one only *within the limits of the Federal Tort Claims Act.* The suit "shall proceed in the same manner as any

action against the United States.... and shall be subject to the limitations and exceptions applicable to those actions." Federal Tort Claims Act, 28 U.S.C. § 2679(d)(4). Assault and battery are specifically excepted. Under the Westfall Act, Mitchell cannot look elsewhere for a remedy.

Other federal circuit court decisions support this clear statutory mandate. In *Aviles v. Lutz*, 887 F.2d 1046 (10th Cir. 1989) the Tenth Circuit determined that, under the Westfall Act, 28 U.S.C. § 2679(d), a plaintiff who claimed injury due to defamation and interference with contractual rights by federal employees could seek a remedy only against the United States under the FTCA. Because the FTCA in terms precluded recovery for the specific tort claims, 28 U.S.C. § 2680(h), the appellate court instructed the district court to dismiss the claims for lack of subject matter jurisdiction. The Tenth Circuit held further that plaintiff could not pursue his claims against the employees individually, that they were immune from suit, because Congress clearly intended the FTCA, with all of its exclusions and limitations, to provide the sole remedy for persons injured by federal employees acting within the scope of their employment. *Aviles v. Lutz*, 887 F.2d 1046 (10th Cir.1989). *See also Sowell v. American Cyanamid Co.*, 888 F.2d 802 (11th Cir.1989); *Moreno v. Small Business Admin.*, 877 F.2d 715 (8th Cir.1989).

The Ninth Circuit, however, has reached a decision which is largely in conflict with these decisions. In *Smith v. Marshall*, 885 F.2d 650 (9th Cir.1989)[6], a medical malpractice suit against a physician practicing in Italy, the Ninth Circuit reversed the district court's dismissal of the physician, substitution of the United States as party defendant, and subsequent dismissal of the case. The court correctly recognized that the FTCA does not provide a remedy

against the United States for claims arising in foreign countries. Since the subject claim arose in Italy, the FTCA precluded the plaintiff from recovery.

The Court, however, then found that the Westfall Act did not provide the physician with immunity from suit in his individual capacity. The court relied on the absence in the statute of any express language that Congress intended to extend immunity to government employees committing torts in foreign countries, even though the FTCA precludes recovery for such acts. The court found this absence significant when compared to a narrow express provision included in the Westfall Act that an action against the Tennessee Valley Authority for injuries arising from the negligence of its employees is exclusive of any other civil action against the employee. *See* Section 9, Westfall Act. It interpreted this as an indication that, absent similar specific language, Congress intended all other federal employees to remain liable and without immunity under the remaining provisions of the Westfall Act. *Smith*, 885 F.2d at 655.[7]

The Ninth Circuit also relied on a statement in a House Committee report, as well as other scattered legislative statements, that under the Westfall Act "no one who previously had the right to initiate a lawsuit will lose that right." *Smith*, 885 F.2d at 655, citing H.R.Rep. No. 100–700, 100th Cong., 2d Sess. 7, *reprinted in* 1988 U.S. Code Cong. & Admin. News 5945, 5951. Notably, the court admitted that it could not "reconcile the report's promise that the rights of individual claimants would not be diminished, with the assertion [in the same House report] that 'any claim against the government that is precluded by the exceptions set forth in Section 2680 of Title 28 U.S.C. also is precluded against an employee in [sic] his or her estate.'" *Smith*, 885 F.2d at 656. It nonetheless concluded that

---

6. *See also Newman v. Soballe*, 871 F.2d 969, 971–73 (11th Cir.1989).

7. The Ninth Circuit misconstrued the significance of Section 9. On its face, the purpose of the section is to ensure that Tennessee Valley Authority (TVA) employees receive the *same* protection under the Act as other federal em-

ployees, despite the fact that it requires the *TVA*, and *not* the United States, to be substituted as defendant in suits against TVA employees.

In fairness to the Court, however, we point out that it also relied upon some specific provisions of 10 U.S.C. § 1089 relating to some limited protections of military physicians.

the Westfall Act did not provide the physician with immunity from suit because the FTCA did not provide a remedy for his actions.

We decline to follow the Ninth Circuit case. The case ignores the general language of § 5 of the Westfall Act, that "[t]he remedy [provided by the FTCA] ... is exclusive of any other civil action ... against the employee.... Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred." Section 5, Westfall Act. In this language of general application, Congress made it clear that, once certified, federal employees remain immune from suit for their tortious actions taken within the scope of their government employment. Isolated language found scattered throughout the legislative history is insufficient persuasion that Congress intended to frustrate the very purpose of the Westfall Act, to protect its employees from the distraction and burden of litigation based upon their employment activities. If there is a policy defect in the statute, it is in a failure of Congress to have waived sovereign immunity broadly enough, not in a failure to protect employees in all of their course-of-employment activities.

We thus find that the district court improperly resubstituted Carlson. Once certified as acting within the scope of her employment, under the Westfall Act the district court was *required* to substitute the United States for Carlson, and treat the case as a claim under the FTCA. The district court complied with this requirement in its order of January 30. The subsequent resubstitution order was directly contrary to this requirement. Upon discovering the jurisdictional exclusion of liability for acts of assault and battery, the district court should have dismissed the entire case. This result may be thought to be harsh. But Congress has decided to relieve its employees of the burden of defending litigation, which is both distracting and costly, and often to the detriment of government operations.

We therefore reverse the district court's order of resubstitution.

REVERSED; CASE DISMISSED.