# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-30144

JOEL G. PORTER,

      Plaintiff - Appellee

v.

TIMES GROUP; TIME BOOKS, doing business as People Magazine; STEVE HELLING,

      Defendants - Appellants

United States Court of Appeals
Fifth Circuit

**FILED**
August 31, 2018

Lyle W. Cayce
Clerk

Appeals from the United States District Court
for the Middle District of Louisiana
USDC No. 3:16-CV-121

Before CLEMENT, HIGGINSON, and HO, Circuit Judges.

PER CURIAM:*

    We are asked to decide whether the district court erred when it allowed Joel G. Porter to amend his complaint to add a party that destroyed complete diversity and then remanded the action to state court. Because we are without appellate jurisdiction, we dismiss.

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-30144

## FACTS AND PROCEEDINGS

Porter—now an attorney in Baton Rouge—married a young woman named Denise in the early 1980s. The marriage was rocky. In 1985, Porter returned home from his graveyard shift at the U.S. Post Office to find Denise stabbed to death in their apartment. There was no sign of forced entry, and Denise's murderer apparently took a shower after the stabbing. Porter was initially a person of interest in the police investigation. But it soon became clear that Porter did not leave work the night of the murder. Denise's killer was never caught, and the case eventually grew cold.

More than two decades later, Detective John Dauthier reopened the case and obtained a warrant for Porter's DNA. Porter sued Dauthier, claiming defamation and constitutional violations for Dauthier's alleged mishandling of the case.[1]

Times Group/Time Books (dba People Magazine) published an article and produced a live-broadcast feed online entitled "Nearly 30 Years After Brutal Killing, Authorities Reopen Cold Case of Denise Porter." An article also appeared in the print version of People Magazine, which Porter alleged has a readership of 46.6 million people. According to Porter, Steve Helling hosted the live broadcast feed, and Anne Lang—a contract reporter, freelance journalist, and Louisiana citizen—wrote the article. The article stated that Porter "seemingly had an ironclad alibi" because "no one saw him leave the premises" of his job. The live broadcast discussed the fact that, for reasons related to the Porters' rocky marriage, Denise had packed her suitcase to leave the day she

---

[1] Porter eventually settled his claims against the police department and others after the DNA evidence did not match Porter, and the police department announced that he was no longer a person of interest. *See* Joe Gyan Jr., *Suits against police dropped after BRPD says lawyer no longer investigated in wife's 1985 murder*, The Advocate (May 9, 2017), http://www.theadvocate.com/baton_rouge/news/courts/article_034e3f76-34d6-11e7-96e8-8b5c187e72ae.html.

No. 17-30144

was murdered. The broadcast also said that Porter was "not thrilled that the police are reopening this case" and referenced his defamation lawsuit.

Readers of People Magazine's online article posted numerous comments about Porter. Here's a sample: "Something is hiding behind those eyes of the husband. Something not to trust. They need to really take another serious look at him as a suspect." "It sounds to me like he simply doesn't want his DNA tested because he doesn't want to be caught as the actual murderer of his wife." "Book him Danno:) The motive points to him and if his DNA is on her his alibi is shot."

Alleging that all of these publications were defamatory, Porter sued People Magazine, Helling, and Lang in Louisiana state court.[2] But, unbeknownst to Porter, Lang had passed away prior to the initiation of the action. As Lang was the only defendant who was also a Louisiana resident, People Magazine and Helling (collectively, People Magazine) removed the action to the Middle District of Louisiana on the basis of diversity jurisdiction. Porter moved to remand, arguing that removal was inappropriate because People Magazine had not proven that Lang was deceased. Porter did not deny that Lang had died, however, and he even moved for the appointment of a representative for Lang in accordance with Louisiana law.

People Magazine responded that Lang died on July 6, 2015, and attached a proposed order requesting Lang's death certificate.[3] The magistrate recommended that Porter's motion to remand be denied, noting that Lang had not been served or joined through her estate and that Porter did not contest that Lang was deceased. Citing Louisiana law, the magistrate explained that

---

[2] Porter also claimed that People Magazine's publications amounted to an intentional infliction of emotional distress.

[3] People Magazine also moved to dismiss or strike Porter's claims under Louisiana's Anti-SLAPP statute.

the proper party following the death of the would-be party is the representative appointed in the succession proceeding brought as a result of the death, not the party's estate. Reasoning that Lang was not a proper party, the magistrate concluded that her citizenship could not be considered when determining jurisdiction and removal was appropriate.

Porter moved to amend his complaint in accordance with Federal Rule of Civil Procedure 15, to add Professor Dorothy Jackson, a Louisiana resident, who had been appointed as Lang's succession representative. People Magazine opposed this motion, arguing Porter's only purpose in amending his complaint was to destroy diversity jurisdiction, Porter had never conclusively demonstrated that Lang was a Louisiana citizen, and Professor Jackson's citizenship was tied to Lang's. People Magazine further argued that the propriety of removal is determined at the time of removal and so Professor Jackson's citizenship would have no bearing on the jurisdiction of the court.

The magistrate recommended granting Porter's motion for leave to file his amended complaint under Rule 15 and remanding the action to the Louisiana state court for lack of diversity jurisdiction under 28 U.S.C. § 1447(e). People Magazine objected to the magistrate's report and recommendation, arguing that Rule 25 forbids the substitution of a party who was deceased before the appeal began and Porter had "failed to properly plead the citizenship of Professor Jackson." Importantly, however, People Magazine did not argue that Professor Jackson's addition to the litigation was barred under Rule 15.

Adopting the report and recommendation of the magistrate, the district court granted Porter's motion for leave and remanded the case to the 19th Judicial District Court in Baton Rouge. The district court dismissed People Magazine's motion to stay the remand pending appeal. This occurred in February of 2017.

No. 17-30144

People Magazine appealed, and now argues the district court abused its discretion when it granted Porter's motion to amend his complaint.

## JURISDICTION

As a threshold issue, we must decide whether this court has jurisdiction to review the district court's order granting Porter's leave to amend, in light of its relationship to the order to remand the case for lack of diversity jurisdiction. *See Mitchell v. Carlson*, 896 F.2d 128, 131–32 (5th Cir. 1990); *Doleac ex rel. Doleac v. Michalson*, 264 F.3d 470, 477–79 (5th Cir. 2001). If we are without jurisdiction, we must dismiss.

The district court remanded Porter's case to the Louisiana state court on the authority of 28 U.S.C. § 1447(e), which states as follows: "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." Usually courts of appeals have jurisdiction to consider final decisions from district courts. 28 U.S.C. § 1291. But, with limited exceptions, Congress has set a jurisdictional bar to appellate review of district court orders granting remand. 28 U.S.C. § 1447(d) ("An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise . . . ."); *see Brookshire Bros. Holding v. Dayco Prods., Inc.*, 554 F.3d 595, 598–99 (5th Cir. 2009).

People Magazine acknowledges that this court has no jurisdiction to review the district court's order remanding the action to state court. Instead, People Magazine argues that this court can review the district court's order allowing Porter to amend his complaint through the "collateral order doctrine." *See Mitchell*, 896 F.2d at 133. Under the collateral order doctrine, a small set of interlocutory orders that meet certain conditions are deemed final. *Cantu v. Rocha*, 77 F.3d 795, 802 (5th Cir. 1996) (discussing doctrine articulated in

No. 17-30144

*Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546–47 (1949)). But, "[i]nterlocutory appeal is the exception, not the rule." *Id.*

People Magazine relies principally on one case to support its position that the collateral order doctrine applies here. In *Doleac ex rel. Doleac v. Michalson*, this court decided whether it had jurisdiction under the collateral order doctrine to consider the district court's decision to allow an amendment joining a party that resulted in both the destruction of diversity and remand to the state court. 264 F.3d at 472. The *Doleac* court explained that the collateral order doctrine "partially restrains the otherwise preclusive § 1447(d)." *Id.* at 478. It stressed that, to satisfy the collateral order doctrine, an amendment order must be both separable from the remand order and collateral. And "the inquiries about separableness (whether § 1447(d) bars review)[4] and collateralness (whether § 1291 bars review)" must not be collapsed into one inquiry. *Id.* at 485.

The *Doleac* court, drawing from the Supreme Court's opinion in *Cohen v. Beneficial Indus. Loan Corp.*, held that to satisfy the jurisdictional demands of § 1291 under the collateral order doctrine, an order must (1) not be "tentative, informal or incomplete," (2) deal with "claims of right *separable* from, and collateral to, rights asserted in the action," (3) be effectively unreviewable on an appeal from final judgment, and (4) be too important to be denied review. 264 F.3d at 489–91 (quoting *Cohen*, 337 U.S. at 546). We are without jurisdiction to review People Magazine's appeal challenging the district court's amendment order unless we conclude that the order satisfies all four of these requirements.

---

[4] We assume without deciding that the amendment order is separable and so is not barred from review by § 1447 because Porter does not seem to contest this point.

No. 17-30144

We look to the *Doleac* court's application of the *Cohen* test for guidance. The *Doleac* court encountered no problems concluding that the amendment order before it "easily [met] the first two requirements of the collateral order doctrine." *Id.* at 490. It decided that the order was not tentative or incomplete because the amendment "*conclusively* determined the disputed question" of whether the party would be added to the litigation. *Id.* Moreover, the amendment order was separable from, and collateral to, rights asserted in the action, because the addition of the party to the lawsuit did not affect the underlying merits of the negligence claim. *Id.*

People Magazine argues along these lines that the order at issue here is not tentative, informal, or incomplete because it definitively added Professor Jackson to the litigation. And whether Lang is a party to the action does not affect Porter's underlying defamation claim. Porter does not seem to disagree. So we assume without deciding that the amendment order satisfies the first two requirements of the collateral order doctrine.

Porter disagrees, however, that People Magazine can meet the third and fourth requirements of the collateral order doctrine (i.e., whether the amendment order would be effectively unreviewable on an appeal from a final judgment and whether it is too important to be denied review). As to the third requirement, the *Doleac* court explained that an order should not be deemed effectively unreviewable on appeal if the order does nothing more than affect the forum in which the suit will be heard. *See* 264 F.3d at 491. But in *Mitchell v. Carlson*, this court held that it had appellate jurisdiction to review a resubstitution order because it subjected an otherwise *immune* party to suit and was therefore effectively unreviewable on appeal. *See* 896 F.2d at 133 ("[T]he district court subjected [the substituted party] to the burden of defending a suit in state court, a burden from which she is entitled to be immune."). It is important to note that there is a key distinction between a

7

party who has been improperly joined and a party who is immune from suit for the purposes of the collateral order doctrine. If a party who is immune from suit is subjected to a trial, the burden of undergoing the trial constitutes a harm that is effectively unreviewable on appeal. *See Doleac*, 264 F.3d at 491. By contrast, a "decision [regarding misjoinder] is not independently reviewable under the collateral order doctrine." *In re Benjamin Moore & Co.*, 318 F.3d 626, 631 (5th Cir. 2002). Thus, an order that merely improperly joins a party cannot satisfy the collateral order doctrine because it is effectively reviewable on appeal.

People Magazine introduces a novel argument on appeal as to why the amendment order affects not only the forum, but also subjects Professor Jackson to a trial that she otherwise would not have to endure. Specifically, People Magazine argues that Porter's claims against Professor Jackson are subject to a one-year prescriptive period under Louisiana law. And because Porter did not file his second motion for leave until more than eighteen months after the articles were published, his claims are prescribed unless they relate back to the date that Porter filed his original petition against People Magazine.

Under Rule 15(c), if an amendment changes the party against whom a claim is asserted, it relates back only if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment received notice of the action, will not be prejudiced, and knew or should have known that the action would have been brought against it. FED. R. CIV. P. 15(c). People Magazine contends that Rule 15 is not available to save Porter's late-filed claims against Lang's succession representative because, within the period provided by Rule 4(m), Professor Jackson did not receive notice of Porter's action or know that Porter's action would be brought against her. According to People Magazine, this is sufficient to satisfy *Mitchell*'s trial-

burden requirement, and so the amendment order is effectively unreviewable on an appeal.

Porter articulates vague disagreement with People Magazine on this point, but does not specifically address People Magazine's argument. Because this is a jurisdictional question, however, the court must examine the basis of its jurisdiction on its own motion if necessary. *See Hill v. City of Seven Points*, 230 F.3d 167, 169 (5th Cir. 2000). As mentioned above, People Magazine failed to raise this Rule 15/relation-back argument before either the magistrate or the district judge. Even if People Magazine had raised its Rule 15 contention before the district court, it would amount to an improper joinder argument. People Magazine has not argued that Professor Jackson is immune from suit. *See Doleac*, 264 F.3d at 491. Thus, the order is not effectively unreviewable on appeal and fails to satisfy the requirements of the collateral order doctrine. *See In re Benjamin Moore*, 318 F.3d at 631.

This analysis also shows why the amendment order fails to satisfy the fourth and final requirement of the collateral order doctrine (i.e., whether the amendment order is too important to be denied review). An order that improperly joins a party, but does not subject an immune party to a trial, is not too important to be denied review. This is especially true here because People Magazine failed to raise its Rule 15 argument before the district court. Even if People Magazine could meet the other three requirements, we would conclude based on this factor alone that we are without jurisdiction.

These points must be considered in view of our precedent stating that appellate review under the collateral order doctrine is the exception, not the rule. *Cantu*, 77 F.3d at 802. Indeed, "[a]s its stringent requirements indicate, the collateral order doctrine is not to be applied liberally. Rather, the doctrine is extraordinarily limited in its application." *Doleac*, 264 F.3d at 491 (quoting

*Ozee v. Am. Council on Gift Annuities, Inc.*, 110 F.3d 1082, 1091 (5th Cir. 1997)).

Because People Magazine has failed to demonstrate that the district court's order granting Porter's motion for leave to amend meets the final two *Cohen* factors, we are without appellate jurisdiction.

DISMISSED.