**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

**No. 99-60754**

---

**LOUIS DOLEAC, Deceased, by Lilah Joyce Doleac his Widow, as**
**Personal Representative,**

**Plaintiff-Appellee,**

**UNITED STATES OF AMERICA,**

**Intervenor,**

**versus**

**ARNE MICHALSON, Etc.; ET AL.,**

**Defendants,**

**ARNE MICHALSON, M.D.,**

**Defendant-Appellant.**

---

**Appeal from the United States District Court**
**for the Southern District of Mississippi**

---

August 27, 2001

Before GARWOOD, HALL,[1] and BARKSDALE, Circuit Judges.

RHESA HAWKINS BARKSDALE:

For this appeal, the threshold issue is our jurisdiction *vel non* to consider the district court's permitting an amendment joining a party, which resulted in both the destruction of diversity of citizenship and the remand of the action to state

---

[1]Circuit Judge of the Ninth Circuit, sitting by designation.

court. On the one hand, if we have jurisdiction, we must consider whether allowing the amendment was proper. On the other hand, if jurisdiction is lacking, we must consider the constitutionality of 28 U.S.C. § 1447(d)'s preclusion of our review. (Section 1447(d) bars review of remand orders except in certain civil rights cases.) Because we lack jurisdiction and § 1447(d) is constitutional, the appeal is **DISMISSED**.

I.

In November 1998, Lilah Joyce Doleac filed this wrongful death action in state court, claiming Dr. Arne Michalson was negligent in failing to discover an aneurysm while reviewing an MRI of her husband, Louis Doleac. Several years after the MRI, Mr. Doleac died of complications arising from the aneurysm.

In addition to Dr. Michalson, the original complaint listed as defendants "John Does A, B, C and D", identified as

> parties to this action whose identities are unknown at this time, ... [who are] other health care providers or persons ... which at any time undertook ... or had a duty to provide medical care or services to the Plaintiff and whose negligence ... and/or accountable conduct caused or contributed to the Plaintiff's damages and injuries as alleged herein.

When the action was filed, Dr. Michalson was a citizen of Idaho; Plaintiff, of Mississippi. Therefore, that December, Dr. Michalson removed this action to federal court on the basis of diversity of citizenship. 28 U.S.C. §§ 1332, 1441, 1446. The day

2

after removal, the magistrate judge issued an order concerning the fictitious parties.

> [A q]uestion appears regarding subject matter jurisdiction.... Plaintiff shall file [a] remand motion bringing jurisdictional concerns to issue or identify, if possible, some of [the] John Doe medical defendants, most of whom would seem to be residents of this state as was the removing defendant when this alleged negligent act[] occurred. Under certain circumstances, [a] case can be remanded when *[a] necessary defendant[]* sued under [a] ficti[ti]ous name is identified to be non-diverse *even though John Doe defendants [are] disregarded for original removal purposes pursuant to* [the] *1988 Act*[, 28 U.S.C. § 1441(a)].

(Emphasis added.) The court stayed discovery pending remand *vel non*.

Plaintiff moved to remand in January 1999, asserting that removal was improper "due to the existence of as yet unidentified John Does [sic] Defendants, which are, upon information and belief, resident citizens ... of Mississippi" and requesting limited discovery to determine the identity of those defendants.

Five months later, in June 1999, Plaintiff moved to amend her complaint to add as a co-defendant Gulf Coast Imaging, P.A. (GCI), a citizen of Mississippi. Plaintiff alleged that Dr. Michalson had acted under GCI's direction and supervision and that its employees assisted him in reading the films at issue and/or in completing the report. The putative amended complaint named as defendants Dr. Michalson, GCI, and John Does A through F. (As discussed *infra*,

3

the parties dispute whether GCI was substituted for a John Doe defendant or added as a new party.)

In considering whether to allow the amendment to add a non-diverse party whose inclusion would destroy diversity and thereby divest the court of jurisdiction, the district court considered four factors it gleaned from *Hensgens v. Deere & Co.*:

> (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction,
>
> (2) whether plaintiff has been dilatory in asking for amendment,
>
> (3) whether plaintiff will be significantly injured if amendment is *not* allowed, and
>
> (4) any other factors bearing on the equities.

*Doleac v. Michalson*, No. 1:98-CV-553-BrR (S.D. Miss. 28 Sept. 1999) (unpublished) (emphasis added) (citing *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987), *cert. denied*, 493 U.S. 851 (1989)). The *Hensgens* factors guide the court in whether to allow an amendment to add a "nondiverse nonindispensable party". *Hensgens*, 833 F.2d at 1182. The district court concluded: Plaintiff had a reason to seek GCI's joinder, independent of a desire to remand, in that it was another potential source of funds to satisfy a damages award; because the time-lapse between the court's December order and the motion to amend was inexplicably lengthy, Plaintiff had been dilatory; denial of the amendment would

4

significantly injure Plaintiff by forcing her to undergo the delay and expense of trying in two courts what was essentially the same action; and other factors bearing on the equities included the interest in judicial economy, Plaintiff's choice of a non-federal forum, and the stage of the proceedings. In a single order, the district court: (1) ruled joinder was warranted; and (2) because the amendment destroyed diversity, remanded the action to state court, quoting 28 U.S.C. § 1447(c) ("[i]f at any time before final judgment it appears that [it] lacks subject matter jurisdiction").

## II.

Dr. Michalson maintains we have jurisdiction to review the order which allowed the amendment and then remanded, asserting that the amendment is both separable and, under the collateral order doctrine, appealable. Notwithstanding the facial simplicity of this issue, the precedent addressing our jurisdiction is complex. In addition to asserting we have jurisdiction, Dr. Michalson contends: the district court erred in failing to apply 28 U.S.C. § 1441(a) (John Doe defendants ignored for purposes of removal); and, if the order is reviewable, the district court abused its discretion in allowing the amendment.[2] In the alternative, he

---

[2]Dr. Michalson requests either reversal through direct appeal or issuance of a writ of mandamus; however, because he never filed a mandamus petition, we need not reach that issue. Furthermore, "*Thermtron* [*Products, Inc. v. Hermansdorfer*, 423 U.S. 336 (1976),] requires review by mandamus *only* when the district court has remanded a cause without authority to do so". *McDermott Int'l, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199, 1203 (5th

5

contests the constitutionality of § 1447(d), which precludes appellate review when the remand is for lack of subject matter jurisdiction.[3]  (Pursuant to 28 U.S.C. § 2403, the United States was permitted to intervene to defend the constitutionality of § 1447(d).)

A.

The parties dispute whether GCI was substituted for one of the John Does or added under Federal Rule of Civil Procedure 19. Although Doleac stated that the motion to amend under Rule 15(a) was in response to the magistrate judge's suggestion that Doleac attempt to identify the John Does, the district court treated the amendment as a joinder under Rules 15, 20, and 21 (not Rule 19), and the amended complaint names as defendants Dr. Michalson, GCI, and John Does A-F (*i.e.*, the John Does in the original complaint all reappear in the amended complaint[4]).

---

Cir. 1990) (emphasis added).

[3]Dr. Michalson filed a timely notice of appeal of "the Memorandum Opinion and Order granting Plaintiff's Motion to Amend Complaint" and moved for a stay of proceedings pending appeal, which was denied.  The parties dispute whether the notice limits the appeal to simply whether the allowance of the amendment was proper or whether the appeal extends to the propriety of remand as well.  Doleac contends that, because Dr. Michalson failed to appeal the remand, he cannot challenge the constitutionality of denying review of it.  Because the remand was encompassed in the memorandum and order referenced in the notice of appeal, Michalson has appealed both issues.  *See* FED. R. APP. PROC. 3(c)(1) (notice of appeal must, *inter alia*, designate judgment, order, or part thereof being appealed).

[4]Not only do all the John Does in the initial complaint reappear in the amended complaint, two more are named; the group

6

1.

Dr. Michalson asserts that, if GCI was substituted for a John Doe defendant, § 1441(a) precludes consideration of its citizenship. We disagree. Even assuming GCI was so substituted (rather than added as a new party), its presence destroyed diversity and defeated subject matter jurisdiction.

Section 1441(a) states: "For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded". 28 U.S.C. § 1441(a). Section 1447(e) allows joinder and remand to state court if, after removal, "the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction". 28 U.S.C. § 1447(e).

Dr. Michalson admits that, under a traditional view of case law, and pursuant to §§ 1447(c) and (e) and 1332(c), the action could not remain in federal court after the addition of GCI. Nevertheless, he contends that § 1441(a)'s "plain language" applies even after a John Doe defendant has been identified. He distinguishes the identification of a John Doe from the situation covered by § 1447(e), explaining that a John Doe is not an "additional" party but rather one that has been present from the beginning of the case. Although the district court did not cite § 1447(e), it followed its procedure: allowing joinder, finding it lacked subject matter jurisdiction, and then remanding.

grew from "A-D" to "A-F".

7

Whether § 1441(a) continues to apply to parties substituted for John Doe defendants is an issue of first impression in our circuit. In *Casas Office Machines, Inc. v. Mita Copystar America, Inc.*, the First Circuit rejected a claim distinguishing the application of § 1441(a) and § 1447(e) to amendments. 42 F.3d 668, 674 (1st Cir. 1995) (concluding "§ 1447(e) applies also to the identification of fictitious defendants after removal"). In *Casas*, the plaintiff, post-removal, replaced fictitious defendants with two named defendants, whose presence destroyed diversity. *Id.* at 670. (The defendants did not bring the lack of diversity to the district court's attention and challenged jurisdiction for the first time on appeal. *Id.* Unlike the case at hand, because there was no remand order, the issue of the appellate court's jurisdiction over the district court's order was not present in *Casas*.) The First Circuit summarized the issue as "whether this substitution [of named defendants for fictitious defendants], which unquestionably destroyed complete diversity, also defeated federal subject matter jurisdiction". *Id.* at 673. *Casas* began by distinguishing *Freeport-McMoRan*, which, in considering substitution under Federal Rule of Civil Procedure 25 (substitution because of death, incompetency, transfer of interest, or public official's separation from office), held diversity jurisdiction is established at the commencement of the action and is not defeated by the substitution of a non-diverse plaintiff who is not indispensable.

8

*Id.* at 673-74 (citing ***Freeport-McMoRan Inc. v. K N Energy, Inc.***, 498 U.S. 426, 428 (1991) (per curiam)).

***Casas*** held the specific legislative directive of § 1447(e) overrode the general principle of ***Freeport-McMoRan*** because "Congress has indicated that federal diversity jurisdiction is defeated so long as, after removal, fictitious defendants are replaced with nondiverse, named defendants, regardless of whether they happen to be dispensable or indispensable to the action". ***Id.*** at 674. Congress, in the legislative history of the Judicial Improvements and Access to Justice Act of 1988, stated that § 1447(e) "also helps to identify the consequences that may follow removal of a case with unidentified fictitious defendants". ***Id.*** at 674 (quoting H.R. REP. No. 889, 100th Cong., 2d Sess. 72-73 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5982, 6033). Therefore, the First Circuit concluded: "diversity jurisdiction was lost ... when the court allowed [the plaintiff] to identify the fictitious defendants". ***Id.*** at 675.[5]

---

[5]In addition, the legislative history of § 1441 demonstrates Congress intended § 1441 to apply only until the John Doe party was identified:

> If the plaintiff seeks to substitute a diversity-destroying defendant *after removal*, the court can act as appropriate under proposed § 1447(d) [enacted as § 1447(e)] to deny joinder, *or* to permit joinder and remand to the State court.

H.R. REP. No. 889, at 112 (emphasis added), *reprinted in* 1988 U.S.C.C.A.N. at 6032. Likewise, the official commentary to the

9

Our court cited *Casas* with approval in *Cobb v. Delta Exports, Inc.*, 186 F.3d 675, 680 (5th Cir. 1999). *Cobb* dealt with the addition of a defendant under Rule 19, not identification of a John Doe. Nevertheless, we explained *Casas*' conclusion that "the legislative history to [§ 1447(e)] indicates that § 1447(e) applies also to the identification of fictitious defendants after removal". *Id.* (quoting *Casas*, 42 F.3d at 674) (explaining that *Casas* found rule of *Freeport-McMoRan* extremely narrow).

For the first time, we address the same issue as did the First Circuit in *Casas*: "whether [] substitution [for a John Doe defendant], which unquestionably destroyed complete diversity, [could] also defeat[] federal subject matter jurisdiction". *Casas*, 42 F.3d at 673. Finding the First Circuit's reasoning persuasive, we hold that § 1441(a) applies only to John Doe defendants as such, not to subsequently named parties identifying one of those fictitious defendants.

revisions of § 1441 supports this reading. It explains that, although § 1441(a) allows the defendant to remove by ignoring the citizenship of the unknown defendant for the time being,

> *the problem may return later*, when, in the course of the proceedings in federal court, the unknown defendant becomes known, and it also becomes known that his citizenship defeats diversity. The result may be a remand of the case for want of federal jurisdiction, unless the plaintiff considers dropping the spoilsport from the case.

Commentary on 1988 and 1990 Revisions of Section 1441, 28 U.S.C.A. § 1441 (emphasis added).

Because § 1441(a) applies only to John Doe defendants as such, it is irrelevant whether Doleac's amendment consisted of an addition of a defendant or of an identification of a John Doe. And, because § 1447(e) apparently encompasses both actions under the term "join", we will do the same for the balance of this opinion.

2.

Dr. Michalson also asserts jurisdiction was fixed at the time of removal and the district court could *not* consider a change in parties. Again, we disagree.

> Generally, jurisdiction is determined at the time the suit is filed.... However, addition of a nondiverse party will defeat jurisdiction.... The language of 1447(c) does not mean that the court cannot consider post-removal developments.... [M]ost post-removal developments — amendment of pleadings to below jurisdictional amount or change in citizenship of a party — will not divest the court of jurisdiction *but an addition of a nondiverse defendant will....*

*Hensgens*, 833 F.2d at 1181 (emphasis added; citations omitted); *see Cobb*, 186 F.3d at 677 ("post-removal joinder of non-diverse defendants under FED. R. CIV. P. 19 destroys diversity for jurisdictional purposes and requires remand, even when the newly joined defendants are *not* indispensable" (emphasis added)). Furthermore, § 1447(e) supports this understanding by directing remand if the district court permits joinder of a defendant whose citizenship destroys subject matter jurisdiction.

11

The far more difficult question is whether we can review the order which first allowed amendment and then remanded.

> An order remanding a case to the State court from which it was removed *is not reviewable* on appeal or otherwise, *except* that an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title [civil rights cases] shall be reviewable by appeal or otherwise.

28 U.S.C. § 1447(d) (emphasis added). Beginning with the exception carved out in **Thermtron Products, Inc. v. Hermansdorfer**, 423 U.S. 336 (1976), the jurisprudence surrounding § 1447(d) grew increasingly complex. *See* **Baldridge v. Kentucky-Ohio Transp., Inc.**, 983 F.2d 1341, 1343-44 (6th Cir. 1993) ("The Supreme Court stated long ago ... that the § 1447(d) proscription is not as broad as it seems.... Since **Thermtron**, appellate courts have paved other detours around § 1447(d)'s bar to review."). The Third and Seventh Circuits observed: "'[S]traightforward' is about the last word judges attach to § 1447(d) these days". **Trans Penn Wax Corp. v. McCandless**, 50 F.3d 217, 222 (3d Cir. 1995) (quoting **In re Amoco Petroleum Additives Co.**, 964 F.2d 706, 708 (7th Cir. 1992)) (internal quotation marks omitted).

Our court summarized the situation as follows:

> Appellate courts are precluded from reviewing remand orders issued pursuant to § 1447(c) [(lack of subject matter jurisdiction)], by appeal, mandamus, or otherwise. *This is true even if the district court's order was*

*erroneous. The rationale for the rule is that allowing federal appeal of remand orders would delay justice in state courts.* The Supreme Court in **Thermtron** *identified one narrow exception* to the strict bar to appellate review of remand orders. A remand order may be reviewed where the district court "has remanded [a case] on grounds not authorized by the removal statutes."

**Angelides v. Baylor College of Medicine**, 117 F.3d 833, 835-36 (5th Cir. 1997) (emphasis added; citations omitted). As in **Angelides**, that exception does not apply here; the district court expressly remanded "[d]ue to the lack of subject-matter jurisdiction". As further explained below, the remand itself is not reviewable.

Despite the seeming clarity of this bar against review of orders remanding based on a lack of subject matter jurisdiction, the judiciary has created a doctrine that partially restrains the otherwise preclusive § 1447(d). Although courts acknowledge this bar, at times a separable and collateral order is reviewed. *See generally, e.g.*, **First Nat'l Bank v. Genina Marine Servs., Inc.**, 136 F.3d 391 (5th Cir. 1998) (finding dismissal of third-party claims separable from remand, but after review, affirming district court's order); **John G. & Marie Stella Kenedy Mem'l Found. v. Mauro**, 21 F.3d 667 (5th Cir.) (finding dismissal of federal claims separate from remand of state law claims and affirming dismissal), *cert. denied*, 513 U.S. 1016 (1994); **Mitchell v. Carlson**, 896 F.2d 128 (5th Cir. 1990) (finding resubstitution in Westfall Act case separable and collateral and, although § 1447(c) and (d) barred

13

review of remand itself, dismissing action because resubstitution was in error).  Therefore, the key question at hand is whether we can review the grant of the amendment that destroyed diversity. The focus is not on an alleged error in remanding for lack of jurisdiction due to the destruction of diversity, but rather on an alleged underlying error in allowing the amendment.

A number of cases dealing with the reviewability of a remand have followed a two-step consideration:  first, of § 1447(d) and *separableness*; and then, of 28 U.S.C. § 1291 and *appealability*. *E.g.*, **Tillman v. CSX Transp., Inc.**, 929 F.2d 1023, 1026-29 (5th Cir.) (considering separable but not reviewable interlocutory order), *cert. denied*, 502 U.S. 859 (1991); **Mitchell**, 896 F.2d at 132-33 (after determining resubstitution order was separable, must ask whether reviewable under § 1291); *see also* **Quackenbush v. Allstate Ins. Co.**, 517 U.S. 706, 712 (1996) (after finding no § 1447(d) bar, considering collateral order exception).[6]  Several of

_____

[6]*See, e.g.*, **Aquamar S.A. v. Del Monte Fresh Produce N.A.**, 179 F.3d 1279, 1287 (11th Cir. 1999) (must address two questions: whether § 1447(d) bars consideration of appeal and whether dismissal of claims was "final order" within § 1291); **Powers v. Southland Corp.**, 4 F.3d 223, 224-25 (3d Cir. 1993) (because petition granting motion for relation-back amendment was separable, review was not barred by § 1447(d); however, that portion of order *was not final* within § 1291); **Aliota v. Graham**, 984 F.2d 1350, 1352-53 (3d Cir.) (whether portion of order resubstituting defendants is reviewable involves two subquestions:  whether barred by § 1447(d) and whether final within meaning of § 1291), *cert. denied*, 510 U.S. 817 (1993); **Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.**, 741 F.2d 273, 277 (9th Cir. 1984) (having concluded § 1447(d) did not bar review of substantive decision,

14

our recent decisions have collapsed the questions of separableness and collateralness. *E.g.*, **Falcon v. Transportes Aeros de Coahuila, S.A.**, 169 F.3d 309, 313 (5th Cir. 1999) (personal jurisdiction determination not separable, which is aspect of collateralness determination; dismissing appeal for lack of jurisdiction); **Angelides**, 117 F.3d at 838 (because immunity and exhaustion decisions were not conclusive under separableness test, collateral order doctrine did not apply; dismissing appeal of denial of remand for lack of jurisdiction).

The concept of separableness originated in **City of Waco v. United States Fidelity & Guaranty Company**:

> True, *no* appeal lies from the order of remand; but *in logic and in fact* the decree of dismissal preceded that of remand and was made by the District Court while it had control of the case. Indisputably this order is the subject of an appeal; and, if *not* reversed or set aside, is *conclusive* upon the petitioner.

293 U.S. 140, 143 (1934) (emphasis added) (reviewing dismissal of cross-complaint). An order is *conclusive* if "it will have the preclusive effect of being functionally unreviewable in the state court". **Linton v. Airbus Industrie**, 30 F.3d 592, 597 (5th Cir.), *cert. denied*, 513 U.S. 1044 (1994). (*Conclusiveness* seems to be the focus of more recent opinions. *E.g.*, **Copling v. The Container**

---

still must ask whether it is final order within § 1291).

15

*Store, Inc.*, 174 F.3d 590, 596 (5th Cir. 1999); *Falcon*, 169 F.3d at 311; *Angelides*, 117 F.3d at 837; *Linton*, 30 F.3d at 596.)

Recently, in *Quackenbush*, the Court restated the rule of finality and the collateral order exception:

> [A] decision is ordinarily considered final and appealable under § 1291 *only* if it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment. We have ... recognized, however, a *narrow class* of collateral orders which do *not* meet this definition of finality, but which are nevertheless immediately appealable under § 1291 because they *conclusively determine a disputed question that is completely separate from the merits of the action, effectively unreviewable on appeal from a final judgment, and too important to be denied review.*

517 U.S. at 712 (emphasis added; citations and internal quotation marks omitted) (finding appellate review not barred under § 1447(d), and then asking whether *Burford*-abstention was reviewable under § 1291); *see **Mitchell***, 896 F.2d at 133 ("The collateral order doctrine embraces 'that small class [of decisions] which finally determine claims of right separable from, and collateral to, rights asserted in an action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.'" (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)). Such an order is appealable under § 1291 "because it put[s] the litigants effectively out of court". *Quackenbush*, 517 U.S. at 713 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*

16

***Corp.***, 460 U.S. 1, 11 n.11 (1983)) (internal quotation marks omitted).

Each of these inquiries — separableness and collateralness — is more fully explained below.

1.

As mentioned, the concept of separableness is rooted in ***City of Waco***, in which the Court found separable a district court order dismissing a third-party cross-claim. ***City of Waco***, 293 U.S. at 142-43. A number of our decisions are factually analogous to ***City of Waco***, finding dismissal of a claim, dismissal of a party, and the entry of summary judgment on federal claims separable and reviewable under ***City of Waco*** despite the unreviewability of the accompanying remand order. *See **First Nat'l Bank***, 136 F.3d at 394 (dismissal of third-party claim); ***Mauro***, 21 F.3d at 670 (dismissal of federal claims); ***Briggs v. Am. Air Filter Co., Inc.***, 630 F.2d 414, 416 n.1 (5th Cir. 1980) (entry of summary judgment on federal claims); ***Self v. Self***, 614 F.2d 1026, 1028 (5th Cir. 1980) (dismissal of party); ***Southeast Mortgage Co. v. Mullins***, 514 F.2d 747, 748-49 (5th Cir. 1975) (dismissal of third-party complaint). In each, the dismissal of the claims or grant of summary judgment obviously was final under § 1291.

Four cases in which our circuit expanded and applied ***City of Waco*** are particularly enlightening: ***Mitchell,*** because it is

17

foundational and oft-cited by this circuit and others; *Soley*, because it explains the distinction between "substantive" and "jurisdictional" decisions; *Linton*, because it was apparently the first decision focusing on the "conclusiveness" aspect of *City of Waco*'s test; and *Angelides*, because it was apparently the first decision to blend the separableness and collateral order doctrine inquiries.

In *Mitchell*, the United States had filed a notice of substitution under the Westfall Act, 28 U.S.C. § 2679, and removed the action to federal court. *Mitchell*, 896 F.2d at 130. The district court concluded the substitution was improper, resubstituted Carlson (the federal employee), and remanded to state court. *Id.* On appeal, our court held § 1447(d) barred consideration of the *remand order* grounded in lack of jurisdiction. *Id.* 131 & n.3. However, it held the *resubstitution order* was reviewable under *City of Waco* and its progeny, because, if the district court had not resubstituted Carlson but had only dismissed the action against the United States, there would have been no action to remand. *Id.* at 132-33 ("the resubstitution order being prior to and separable from the remand order, § 1447(d) does not bar ... review of the resubstitution order"). (The court did not examine conclusiveness as a separate inquiry.)

Having held § 1447(d) did not bar review of the resubstitution order, *Mitchell* next considered whether § 1291 barred review. *Id.*

18

at 133. It ruled the collateral order doctrine allowed review because the resubstitution effectively denied Carlson immunity. *Id.* Holding that the resubstitution was in error and that the district court simply should have dismissed the action after dismissing the United States as a defendant, our court reversed and dismissed. *Id.* at 135.

In *Soley*, the district court had remanded the action to state court pursuant to § 1447(c), concluding the action did not arise under ERISA and the plaintiff's claims were not within the boundaries of ERISA preemption. *Soley v. First Nat'l Bank of Commerce*, 923 F.2d 406, 406-07, 409 (5th Cir. 1991). In considering "the applicability of § 1447(d) to remand orders based on preemption", *id.* at 408, our court concluded precedent precluded review because "the district court did not clearly and affirmatively state a non-1447(c) ground", *id.* at 409 (citing *In re Merrimack Mut. Fire Ins. Co.*, 587 F.2d 642, 647 (5th Cir. 1978)). Moreover, it found helpful the Ninth Circuit's distinction between "complete preemption", *a jurisdictional issue*, and the "preemption defense", *a substantive inquiry*. *Id.* at 408 (citing *Whitman v. Raley's Inc.*, 886 F.2d 1177 (9th Cir. 1989)). *Soley* construed the district court's decision as *jurisdictional*, and therefore having no preclusive effect on the state court's consideration of the substantive preemption defense. *Id.* at 409. Accordingly, it distinguished the order from those in *Mitchell* and *City of Waco*, in

19

which the state court could not reconsider the resubstitution in the former or the dismissal of the cross-claim in the latter. *Id.* at 410. As to separableness, our court said:

> [The] rejection of an ERISA preemption defense does not "in logic and in fact" precede a remand order because, under the "well-pleaded complaint" rule, a defense does not confer removal jurisdiction. Instead, if the district court considered the preemption defense, it did so only because of an erroneous belief that the defense was relevant to the jurisdictional issue.

*Id.* at 409-10; *see* *Copling*, 174 F.3d 590 (finding *Soley* indistinguishable and dismissing appeal after district court remanded in absence of ERISA conflict preemption (preemption defense)). Because it concluded the remand was unreviewable and the issue of preemption was not separable, *Soley* did not consider the § 1291 issue.

In *Linton*, the defendants had removed the action on the grounds of diversity and federal question jurisdiction. 30 F.3d at 593. When the defendants appealed the district court's order that they were not instrumentalities of a foreign state, our court dismissed for lack of jurisdiction because, although denials of immunity are generally subject to interlocutory appeal, the district court had not ruled on the entire motion, which raised questions of *in personam* jurisdiction and *forum non conveniens*. *Id.* at 594. The parties then entered into a stipulation that one plaintiff was "stateless" for jurisdictional purposes; the district

court subsequently concluded diversity was absent and remanded the action for lack of subject matter jurisdiction. *Id.* at 594-95. Relying on *Mobil Corporation v. Abeille General Insurance Co.*, 984 F.2d 664, 665 (5th Cir. 1991) (concluding district court's decision that insurance company instrumentality of foreign sovereign was jurisdictional, not substantive), our court held § 1447(d) barred review of the jurisdictional decision to remand. *Linton*, 30 F.3d at 596. *Linton* proceeded to consider the separableness doctrine, however, because the defendants contended they sought review, not of the remand, but rather of the Foreign Sovereign Immunities Act (FSIA) order. *Id.* *Linton* explained:

> In determining whether an order is "separable" and thus can be afforded appellate review under *City of Waco*, we have focused on language in the Court's opinion suggesting that an order is "separable" from an order of remand if it precedes that of remand "in logic and in fact" and is "conclusive," *i.e.*, it *will have the preclusive effect* of being functionally unreviewable in the state court. Although the district court's FSIA order in the instant case may have preceded the court's order of remand "in logic and in fact," we cannot say that it was "conclusive." ... [T]he district court's determination that the FSIA is inapplicable to the ... Defendants can be deemed a jurisdictional finding under the facts of this case and, as such, *can be reviewed by the state court upon remand*. Under *City of Waco* and the jurisprudence of this circuit, the district court's FSIA order *is therefore not "conclusive"* upon the Airbus Defendants so as to be "separable" and hence reviewable by this court.

21

*Id.* at 597 (emphasis added).  *Linton* appears to be the first decision in which our court expressly focused on "conclusiveness" as a distinct aspect of the separableness inquiry; but *Linton*'s consideration of the issue was not without foundation because, for example, *In re Adams* observed that, absent appellate review, the district court's reinstatement decision would be "functionally non-reviewable" in state court, and *Soley* said that concluding that the claims were not within ERISA preemption was jurisdictional, not substantive, and thus reviewable by the state court.  *Id.* at 597 n.26 (citing *Adams v. Sidney Schafer & Assocs. (In re Adams)*, 809 F.2d 1187, 1189 (5th Cir. 1987), and *Soley*, 923 F.2d at 419).

*Angelides* considered reviewability following the district court's remanding the action for lack of subject matter jurisdiction upon rejecting immunity and exhaustion defenses.  117 F.3d at 835.  Our court held the *remand order* was unreviewable, *id.* at 835-36, but turned to the collateral order doctrine to determine whether the *denial of the motion to dismiss* on grounds of immunity and nonexhaustion of administrative remedies was reviewable, *id.* at 836-38.  *Angelides* blended the separableness and collateral order exception inquiries.  It first explained:

> The collateral order doctrine embraces that small class [of decisions] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require

22

that appellate consideration be deferred until the whole case is adjudicated.

*Id.* at 837 (internal quotation omitted; alteration in original). Our court then turned to a consideration of separableness, defining it as having two requirements:

First, it must precede the order of remand "in logic and in fact," *so as to be made while the district court had control of the case.* Second, the order sought to be separated must be "*conclusive*." An order is "conclusive" if it will have the "preclusive effect of being functionally unreviewable in the state court."

*Id.* at 837 (emphasis added; citations omitted). It concluded that, although the immunity and exhaustion decisions preceded the remand order in logic and in fact, they were *jurisdictional decisions* that could be reviewed by the state court and, therefore, were not conclusive. *Id. Angelides* set out a comparison of issues that were *substantive and therefore conclusive* and some that were *jurisdictional and therefore not conclusive*: In *City of Waco* (dismissal of cross-claim), *Mitchell* (resubstitution under Westfall Act), and *Mauro* (dismissal of federal claims), "the separable portion of the order denied a substantive right not subject to review by the state court". *Id.* at 837. Our court found the immunity and exhaustion issues closer to those in *Linton* (immunity under FSIA), *Mobil Corporation* (same), and *Soley* (ERISA preemption), cases dealing with *jurisdictional findings not binding* on the state court. As noted, it therefore concluded: "The

23

collateral order doctrine does not apply because the jurisdictional issues determined by the district court are not conclusive". *Id.* at 838 (emphasis added). (*Angelides* appears to be the first decision in which our court considered separableness from the remand order in conjunction with the collateral order exception, hinging the application of one on the other.) Therefore, the appeal was dismissed. *Id.*

While *Mitchell*, *Soley*, *Linton*, and *Angelides* provide a background for considering the issues in this case, our most factually analogous precedent is *Tillman.* *Tillman* concerned the reviewability of allowing the addition of a party claimed to be immune. The case at hand presents a question of first impression in our circuit: whether allowing the addition of parties who destroy diversity is reviewable, notwithstanding § 1447(d). *Tillman* does not completely control the outcome of this case because there the district court found immunity, not lack of diversity, precluded subject matter jurisdiction. Furthermore, much of what the *Tillman* court stated is *dicta*, and some of what it said conflicts with prior precedent.

In *Tillman*, plaintiffs moved to amend to name the Louisiana Department of Transportation and Development (DOTD) as a defendant. *Tillman*, 929 F.2d at 1025. In considering whether to allow the amendment, the district court considered the *Hensgens* factors, *id.*, just as did the district court in this case. The *Tillman* district

24

court, in a single order, granted the joinder of DOTD and remanded, assuming erroneously that, because of DOTD's Eleventh Amendment immunity, the district court lost jurisdiction upon DOTD's becoming a party. *Id.*[7]

"Since the joinder of the DOTD provided the judge's ... impetus for remanding the case" and preceded the remand "both in logic and in fact", our court ruled the issues of the amendment and the remand were separable. *Id.* at 1026 (internal quotation marks omitted) (quoting *City of Waco*, 293 U.S. at 143).

Turning to the remand, our court stated, as discussed in note 7, *supra,* that the trial court was mistaken in assuming it lost jurisdiction as soon as the DOTD became a party; DOTD's immunity did not affect diversity and DOTD could have waived its immunity. *Id.* at 1027. Nevertheless, our court concluded it could not review the remand because the district court had "explicitly stated that the destruction of its jurisdiction[, a § 1447(c) basis,] served as one of the grounds for remand ... [thereby] cloak[ing] the remand

---

[7]*Tillman* explained: "The DOTD's temporary presence as a party would not have tainted or obliterated a classic case of diversity. Consequently, the grant of leave to amend was an unreviewable interlocutory order". *Tillman*, 929 F.2d at 1028-29 (emphasis added). It added: "Before an appellate court could review such an interlocutory order, it must have practical finality; meaning that the appellant was effectively out of federal court. As we have concluded, despite the trial court's mistaken assumption to the contrary, the case still resided in federal court after the addition of the DOTD". *Id.* at 1029 n.9 (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. 1).

25

order in the § 1447(c) absolute immunity from review". *Id.* at 1028. It then stated in sweeping terms:

> Whether right or wrong — indeed on the assumption that its premise for remand was wholly unfounded — the trial court remanded the case because the addition of the DOTD deprived the court of jurisdiction. This case therefore lies irretrievably in state court.... [O]ur conclusion essentially renders review of whether the trial court abused its discretion by allowing the amendment a postmortem exercise....

*Id.* at 1028.

Our court explained that its subsequent consideration of the leave to amend was "extra postage", implying that it was *dictum*, yet proceeded to conclude that the amendment-allowance was an unreviewable interlocutory order. *Id.* Nevertheless, the court suggested that, had the grant of leave to amend been final, it could have been reviewed. *Id.* at 1028-29 & 1029 n.9. The ***Tillman*** court did not explicitly consider the collateral order exception, but alluded to it by citing ***Moses H. Cone Memorial Hospital***. *Id.* at 1029 n.9.

In its conclusion, the court observed:

> Consequently, having been erroneously remanded on § 1447(c) jurisdictional grounds, this case is irretrievably beyond anything we can do about it. We cannot review it by any means. We emphasize our complete inability to do anything about the trial court's joinder order, *whether interlocutory or final*, because what we cannot review we cannot by some juridical self-help get back to federal court.

26

> While we point out that the trial court did *not* abuse its discretion in allowing joinder, this determination only provides extra postage. The mere presence of a § 1447(c) ground as one of the bases for the trial court's remand has returned this case to sender, without a forwarding address for federal jurisdiction.

*Id.* at 1029 (emphasis added).

Three aspects of this opinion raise concern. First, its final statement that on no occasion could the court correct any error, even if the amendment-allowance was a final order, is difficult to reconcile with its earlier footnote that, had the amendment-allowance been "final", the court could review it. It appears the *Tillman* court thought that, although the issues were separable, even if the amendment were reviewable, no remedy was available because it could not touch the remand.

Second, the *Tillman* court did not need to reach this last issue of what effect an error as to the amendment, if a final order, would have on an order to remand. Having concluded the amendment was not final, any statement as to what would have occurred if it were final is *dictum*.

Third, *Tillman* suggests that, once an action has been remanded, if the resulting remand cannot be reviewed by the appellate court, a prior, underlying order of the district court cannot, in any circumstances, be reviewed. Yet, as detailed above, our cases both preceding and following *Tillman* have allowed

27

appellate review of a separate issue, if it is reviewable under §

1291 or under an exception to § 1291-finality, such as the

collateral order doctrine.  *E.g.*, ***First Nat'l Bank***, 136 F.3d 391;

***Mauro***, 21 F.3d 667; ***Mitchell***, 896 F.2d 128; ***In re Adams***, 809 F.2d

1187.  In short, ***Tillman***, or at least its *dicta*, conflicts with our

prior precedent that allows review of a separable, collateral order

despite preclusion of the review of remand.  *E.g.*, ***Mitchell***, 896

F.2d 128 (finding resubstitution was separable and collateral, and,

although § 1447(c) and (d) barred review of remand itself,

dismissing action because resubstitution was in error); ***In re***

***Adams***, 809 F.2d 1187 (considering district court's dismissal of

appeal of bankruptcy court's reinstatement and resulting remand to

state court; reversing dismissal and vacating reinstatement as

superfluous; finding no jurisdiction to consider removal).[8]  Of

---

[8]The Third Circuit agrees that ***Tillman***'s conclusion conflicts
with our earlier analysis in ***Mitchell***:

> [***Tillman*** says:] "... We emphasize our complete
> inability to do anything about the trial
> court's joinder order, whether interlocutory
> or final, because what we cannot review we
> cannot by some juridical self-help get back to
> federal court."  ... [T]he statement was pure
> dicta since the [court had previously]
> conclu[ded] that [the] decision allowing
> joinder was interlocutory....  [W]e disagree
> with the possible implication of the quoted
> material — that once an entire case has been
> remanded and the underlying remand cannot be
> reviewed, a prior order of the district court
> cannot, in any circumstances, be reviewed by
> the federal court of appeals.  We believe, to

28

course, prior precedent controls. *E.g., **United States v. Texas Tech Univ.***, 171 F.3d 279, 286 n.9 (5th Cir. 1999) ("Where two panel decisions conflict, the prior decision constitutes the binding precedent."), *cert. denied*, 530 U.S. 1202 (2000). (Cases subsequent to ***Tillman*** that review orders separable from remand include: ***First National Bank***, 136 F.3d 391 (ruling dismissal order separable from remand, but after review, affirming district court's order), and ***Mauro***, 21 F.3d 667 (ruling dismissal of federal claims separate from remand of state law claims and affirming dismissal; no appeal of remand).)

Within ***Tillman*** itself is an indication that the ***Tillman*** court spoke too broadly: although it implied that an underlying order could never be reviewed, ***Tillman*** took the time to find the amendment a separable order and considered whether it was final; this review would have been superfluous if the court "c[ould] not review it by any means".

---

the contrary, that if there is independent appellate jurisdiction over an issue under the governing federal statutes, the fact that the district court may have remanded the case cannot deprive the court of appeals of the jurisdiction granted to it by Congress.... This result is supported by cases such as ***Mitchell v. Carlson***.

***Powers***, 4 F.3d at 229.

Accordingly, to the extent that *Tillman* stands for the proposition that the joinder was separable, it is on point and controlling. Therefore, consistent with *Tillman*, the amendment-allowance in the case at hand is separable. But, as to whether that amendment falls under the collateral order exception, *Tillman* is distinguishable because it explained that DOTD's joinder did not immediately destroy jurisdiction (on the grounds of immunity), whereas in this case, it did (on the grounds of lack of diversity). *Cf. Cobb*, 186 F.3d at 678 ("once it permitted joinder of the non-diverse defendants, the court lost subject matter jurisdiction and thus had no power even to consider whether fraudulent joinder applied"). In sum, *Tillman* considered only the appealability of an interlocutory order, not the collateral order exception. Furthermore, its conclusions regarding the interlocutory order were *dicta* and its suggestion that on *no* occasion could the underlying amendment be considered conflicts with our prior precedent. Therefore, *Tillman* does not control our consideration of the collateral order exception. Instead, and as noted *supra*, this is an issue of first impression in our circuit.

2.

As mentioned, several recent cases collapse the inquiries about separableness (whether § 1447(d) bars review) and collateralness (whether § 1291 bars review). For example, *Angelides* stated: "As the district court's order was not

30

'conclusive,' the collateral order doctrine does not apply and this court lacks appellate jurisdiction". **Angelides**, 117 F.3d at 838.

**Falcon** considered the entire question of separableness as part of the collateralness determination:

> To fall within the collateral order doctrine, however, an order must (among other requirements) be "separable" from the merits of the underlying action.... [I]t must precede the order of remand "in logic and in fact" ... [and] be "conclusive."

**Falcon**, 169 F.3d at 311 (citations omitted). It is questionable how distinct the inquiry into separableness should be from that into collateralness, both in the light of precedent and also in the light of the admitted overlap of the questions: both definitions include the concept of conclusiveness, and the collateral order exception includes the concept of separateness.

The inquiries should remain distinct for several reasons: First, the definitions of separateness and of conclusiveness in the context of the reviewability of a remand order may be distinct from their definitions under the collateral order exception. For example, the "separableness" requirement of the collateral order doctrine requires that the issue be separable from the merits, not that it be separable from the order of remand. Second, the precedent most on point, **Tillman**, applies the two-step approach. Third, the collateral order doctrine has an existence independent of the remand question, and it arises, of course, in many situations other than when § 1447(d) bars review.

31

Regarding separableness, under **Tillman**, allowing an amendment adding a party is a separable order. However, **Tillman** did not explicitly consider the two specific aspects of separableness considered by later decisions: whether the order preceded remand *and* whether it was conclusive. *E.g.*, **Falcon**, 169 F.3d at 311; **Angelides**, 117 F.3d at 837.

For the case at hand, it is obvious that the amendment-allowance preceded the remand "in logic". Without an identified Mississippi defendant, there would have been no basis to consider remand; the amendment "provided the ... impetus for the remand of the case". **Tillman**, 929 F.2d at 1026. A Third Circuit opinion, however, suggests the amendment did not precede the remand in fact:

> If the court looks to an issue *for the purpose of* determining subject matter jurisdiction, the issue is *not* separable because it *cannot* be said to have preceded the remand decision "in logic *and in fact*." If, however, as in **City of Waco**, the issue has independent relevance in adjudging the rights of the parties (*i.e.*, relevance beyond determining the existence of federal subject matter jurisdiction), the decision is separable and falls within the reasoning of **City of Waco** — even if it also happens to have an incidental effect on the court's jurisdiction.

**Powers v. Southland Corp.**, 4 F.3d 223, 228 (3d Cir. 1993) (emphasis added and in original). Under **Powers**' reasoning, it is questionable whether the amendment had "independent relevance in

adjudging the rights of the parties" and only "an incidental effect" on the court's jurisdiction because, had GCI not been added, GCI still could have been sued in state court; therefore, arguably, it ultimately had little "relevance beyond determining [] jurisdiction". Furthermore, it is questionable whether the amendment-allowance preceded the remand "in fact", because the *Hensgens* factors make the consideration of the two issues simultaneous and intertwined. *Cf.* *Aliota*, 984 F.2d at 1353 ("[U]nless the question of resubstitution [of parties] is viewed as somehow inextricably linked to the question of remand, ... § 1447(d) ... does not bar review."). Nevertheless, because the district court in *Tillman* applied the *Hensgens* factors, we are bound by our precedent which concludes the issues *are* separable.

Whether the amendment was *conclusive*, — having "the preclusive effect of being functionally unreviewable in the state court", *Angelides*, 117 F.3d at 837 — is a question our court has not previously considered.[9] (*Tillman* did not address conclusiveness, nor apparently had our court done so previously.) The state court will be able to review whether GCI is a proper party, yet this is not in dispute. The question of whether GCI was properly joined under *Hensgens*, however, is a determination that the state court

---

[9]Dr. Michalson asserts the decision to take away the federal forum was conclusive. But, in considering separableness, we are considering whether the *amendment* was conclusive, not whether the *remand* was.

33

will not review.  Therefore, allowance of the amendment appears to be conclusive, thus separable and reviewable.

As discussed, our court has defined conclusiveness in terms of whether the order was "substantive" or "jurisdictional":  if a decision is simply jurisdictional, it is not conclusive.  *E.g.*, *Angelides*, 117 F.3d at 837; *Mobil Corp.*, 984 F.2d at 666.  The way the terms commonly are used, it appears the district court's allowance of the amendment was jurisdictional — it was not based upon the substance of the parties' claims but, under *Hensgens*, involved a balancing of interests; and it did not affect the merits of the parties' claims or their right to pursue those claims but merely determined the forum in which they would be decided.  Yet in the context of remand and an exception to § 1447(d), "substantive" does not necessarily refer to whether a decision involves substantive rather than procedural law.[10]  Instead, as explained

---

[10]The Eleventh Circuit avoided the seeming incongruity between the two definitions of "substantive" by explaining:

> Unlike the "matter of substantive law exception" to section 1447(d), which allows courts of appeals to review only those remand orders that are based on substantive determinations of law, the *Waco* doctrine allows us to review a district court's jurisdictional determinations.  This distinction exists because the "matter of substantive law exception" and the *Waco* doctrine apply to different types of orders.  The "matter of substantive law exception" applies to the review of a remand order *itself*, that determines the substantive issues of the case in a way that is conclusive

34

above, a "substantive" decision is one that will have a preclusive effect in the state court; a "jurisdictional" finding can be reviewed by the state court upon remand. *Linton*, 30 F.3d at 596; *Soley*, 923 F.2d at 409. In this sense, because the state court will not, indeed cannot, review the *Hensgens* factors, the decision to allow the amendment was "substantive". On the other hand, even though the state court cannot review the application of those factors (indeed, has no reason to), the district court's application of them does not exactly have a "preclusive" effect on the state court. The district court's application of the *Hensgens* factors is irrelevant to the state court's consideration of the case, far from preclusive. This ground could support finding the decision not substantive, because it is not binding on the state

---

because it is unreviewable by the state court. The reason that the "matter of substantive law exception" does *not* apply to a remand based on a district court's jurisdictional findings is that these findings have *no* conclusive effect upon the state court action.... *When a district court enters an order to do something other than remand (such as dismissal of a claim or a party), and this order changes the contours of the state court action after remand, however, it does not matter whether the issue of law the court decided when it entered the order was jurisdictional or substantive; either way, the parties' rights have been altered in a manner that the state court cannot revisit.*

*Aquamar*, 179 F.3d at 1286 (citing *Angelides*, 117 F.3d at 836-38) (multiple citations omitted; emphasis in original and added).

court. While the conclusiveness of the amendment suggests a substantive decision, the lack of preclusiveness suggests a jurisdictional decision.

*Angelides* found helpful a comparison of issues previously found separable and those not separable. *Angelides*, 117 F.3d at 837. Along those lines, comparing the amendment at issue to determinations found separable, it is not analogous to *City of Waco*, *Mauro*, and *First National Bank*, all of which related to dismissal of a claim, not addition of a party. *See **Nutter v. Monongahela Power Co.***, 4 F.3d 319, 321 (4th Cir. 1993) ("Which portions of a remand order are severable is not entirely clear, although most decisions applying *City of Waco* have involved orders dismissing some party or claim."). Nor is this case analogous to *Mitchell*, in which a party who would not otherwise have been subject to litigation was resubstituted as a party, *Mitchell*, 896 F.2d at 133; here, the parties do not dispute that GCI could be sued in state court. Nor is this case like *In re Adams* or *Mitchell* in which, had the district court not taken a particular action, no case would have remained for remand. *Mitchell*, 896 F.2d at 132 (resubstitution); *In re Adams*, 809 F.2d at 1189 (dismissal of appeal of reinstatement).

In contrast to these cases, the amendment at issue here simply determined the forum in which the claims would be decided and that

36

both parties would be subject to the same action. *Cf.* ***Washington Suburban Sanitary Comm'n v. CRS/Sirrine, Inc.***, 917 F.2d 834, 836 n.4 (4th Cir. 1990) (distinguishing remand under § 1447(e) following joinder of defendant from ***City of Waco*** in that "district court here did not reach an issue which resulted in substantive issues being later barred"). Therefore, it does not appear analogous to issues found separable.

On the other hand, the allowance of an amendment is more separable than the issues of preemption or foreign sovereign immunity, which were found non-separable in ***Linton***, ***Mobil Corporation***, and ***Soley***. In contrast to those issues, an amendment adding a party generally requires a distinct order. *See* FED. R. CIV. PROC. 15(a) (allowing party to amend once as matter of course any time before responsive pleading or, if no responsive pleading permitted and action not yet placed on trial calendar, within 20 days of service; otherwise requiring leave of court or written consent of adversary). The determination of whether a party is of diverse citizenship (the specific reason for the remand at issue) is more analogous to preemption and immunity determinations than is the allowance of the amendment.

One final consideration counsels toward concluding the issues are not separable. Finding the amendment separable when remand is under § 1447(c) may produce results incongruous with remand under § 1447(e). The precedent highlighting this issue arose in other

37

circuits and therefore is not binding on our court; however, we find it noteworthy. And, should our court ever consider this issue *en banc*, it may find a consideration of the relationships between §§ 1447(c) and 1447(e) helpful in seeking a unified, logical, harmonized approach to the review of remand orders that result from the addition of a non-diverse party.

In the case at hand, as an alternative to remanding under § 1447(c), the district court could have remanded under § 1447(e). It provides:

> If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.

28 U.S.C. § 1447(e). Several courts have concluded that § 1447(d)'s bar of appellate review applies to this subsection, added in 1988, by extending the reasoning of **Thermtron**, which bars review of a remand under § 1447(c), to the whole statute, including subsequent amendments. *See **In the Matter of Fl. Wire & Cable Co.**, 102 F.3d 866 (7th Cir. 1993); **Washington Suburban Sanitary Comm'n.**, 917 F.2d 834; **Harrell v. Pineland Plantation, Ltd.**, 914 F. Supp. 119, 120-21 (D.S.C. 1996) (denying motion for reconsideration of remand because "§ 1447(d) precludes the court from reviewing its [] remand decision made pursuant to § 1447(e)" (citing **Washington Suburban Sanitary Comm'n**)). For example, in **Washington Suburban Sanitary Commission**, the Fourth Circuit explained:

We note that much of the language in *Thermtron* is cast in terms of the grounds given for remand in § 1447(c). Section 1447(e) was *not* added to § 1447 by Congress until 1988. *We fail to see any reason to treat the grounds for remand authorized by § 1447(e) in a different way than the Supreme Court treated the grounds authorized in § 1447(c).* Our opinion is reinforced by the policy behind the Congressional decision to limit review of remand orders.... It seems to us that the *interest in preventing delay* is the same whether the remand is based on the grounds authorized in § 1447(c) or based on the grounds authorized in § 1447(e).

*Washington Suburban Sanitary Comm'n*, 917 F.2d at 836 n.5 (emphasis added). The court also concluded the joinder was not a separable, reviewable order under *City of Waco*, explaining: "Unlike the action of the district court in *Waco*, the district court here did not reach an issue which resulted in substantive issues being later barred. It merely, as expressly authorized by §1447(e), permitted joinder of a party and remanded to the state court". *Id.* at 836 n.4.

Of course, because the district court remanded under § 1447(c), the relationship between § 1447(d) and § 1447(e) is not before us. We note, however, that, when the question comes before this court, if our court agrees with the Fourth and Seventh Circuits that § 1447(d)'s bar extends to a joinder and remand under § 1447(e), it would not seem to make sense to hold that the joinder is separable and reviewable if the district court takes the same action but references § 1447(c) instead of subpart(e).

39

Because *Tillman*'s holding that the allowance of an amendment is separable does not clearly conflict with any prior precedent, *Tillman* controls. *E.g., Broussard v. S. Pac. Transp. Co.*, 665 F.2d 1387, 1389 (5th Cir. 1982) (en banc) (absent intervening change in law, one panel cannot overturn another). Therefore, we must conclude that the amendment-allowance was a separable order, reviewable despite the § 1447(d) bar that applies to the review of the remand itself.

b.

Having concluded the amendment-allowance was a separable order, we must next decide whether that ruling is appealable under § 1291 or under an exception to the rule of finality. This question is considered independently because, as noted, the collateral order exception is defined by cases that cover an array of subjects, not just remand.[11]

The parties discuss the applicability of *Quackenbush*, in which the district court had remanded in the light of the *Burford* abstention doctrine, but the Supreme Court held that § 1447(d) did not bar review, because the remand had not been under § 1447(c).

---

[11]*See, e.g.*, *Mitchell v. Forsyth*, 472 U.S. 511 (1985) (pretrial denial of defense of qualified immunity appealable); *Coopers & Lybrand v. Livesay*, 437 U.S. 463 (1978) (no jurisdiction to review certification of class); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) (jurisdiction to review order imposing costs of notice to class on defendants); *Cohen*, 337 U.S. 541 (jurisdiction to consider statutory requirement that derivative action plaintiffs post bond).

*Quackenbush*, 517 U.S. at 710-11.  The Court ruled the order final in that it effectively put the parties out of court.[12]  It concluded the remand *conclusively* determined an issue separable from the merits, that of whether the federal court should decline to exercise jurisdiction in the interests of comity and federalism, and it would not be subsumed in any other appealable order.  *Id.* at 714.  Finally, the issue of abstention was sufficiently important to merit immediate appeal.  *Id.*  Yet *Quackenbush* is not completely

---

[12]The Seventh Circuit in *Amoco* criticized our ruling in *McDermott*, 944 F.2d 1199, that remand constituted putting the parties effectively out of court.  *Amoco*, 964 F.2d at 712 (reasoning that orders identifying appropriate forum for case are not appealable because they do not effectively dismiss case and therefore *McDermott* was in error).  In *Quackenbush*, the Supreme Court confirmed that a remand falls within the collateral order exception.  In the context of applying the collateral order doctrine, the Court, comparing the factual scenario to its earlier decision in *Moses H. Cone Memorial Hospital*, stated:

> No less than an order staying a federal court action pending adjudication of the dispute in state court, *it puts the litigants in this case effectively out of court*.  Indeed, the remand order is clearly more final than a stay order in this sense.  When a district court remands a case to a state court, the district court disassociates itself from the case entirely, retaining nothing of the matter on the federal court's docket.

*Quackenbush*, 517 U.S. at 714 (emphasis added; internal quotation marks and citation omitted).  While establishing that remanding an action to state court effectively puts a party out of court, *Quackenbush* does not resolve whether an amendment that results in remand can be viewed as doing the same.

on point because there the Court considered the remand itself, not a decision prior to the remand.

The allowance of the amendment easily meets the first two requirements of the collateral order doctrine. It was not "tentative, informal or incomplete", *Cohen*, 337 U.S. at 546, but instead *conclusively* determined the disputed question of GCI's presence in the litigation. It also dealt with "claims of right *separable* from, and collateral to, rights asserted in the action". *Id.* (emphasis added). A separable decision in the context of the collateral order doctrine is "not of such an interlocutory nature as to affect, or to be affected by, [a] decision [on] the merits". *Id.* Obviously, permitting adding GCI did not affect the negligence claim.

The third consideration is whether the decision is effectively unreviewable on the appeal from final judgment. If the case had not been remanded, the decision to grant or deny the amendment would not have been reviewable prior to appeal from the final judgment. As the Third Circuit pointed out in *Powers*:

> As a starting proposition, if the relation back amendment were not tied to a remand order, there would be little question that review would be unavailable at this juncture. First, it cannot be contended that an order permitting (or denying) joinder of a party, standing alone, is appealable under the collateral order doctrine.... The right not to be joined as a party is not significantly different from the myriad of other pretrial claims of a right to dismissal. But as is made clear in *Van Cauwenberghe [v. Biard*, 486

42

> U.S. 517 (1988)] these claims are insufficient
> to satisfy the third prong of the collateral
> order doctrine....

4 F.3d at 232.

Yet in this case, although the amendment conclusively determined the issue of jurisdiction, which was completely separate from the merits, the precise reason it was unreviewable on appeal from a final judgment was because of § 1447(d). If the remand had not been granted, the amendment-allowance would be reviewable on appeal of the final judgment. If the remand had been granted on a ground not covered by § 1447(c), review of the remand itself would have been permissible, according to *Quackenbush* and the collateral order exception. In this instance, § 1447(d) itself "put the litigants effectively out of [federal] court", yet this is the specific purpose of § 1447(d).

To clarify the issue at hand, we consider an alternative scenario. Suppose the district court had allowed the addition of GCI several days before the parties pointed out GCI was non-diverse. The addition would have immediately destroyed subject matter jurisdiction (in contrast to *Tillman*), but that order would not have been immediately appealable as a collateral order. Not until the district court later remanded the case for lack of subject matter jurisdiction could Dr. Michalson have plausibly asserted the issue was reviewable.

Because we do not think Congress intended the bar in § 1447(d) to turn an otherwise non-collateral, unreviewable interlocutory order into a collateral, appealable order, we conclude that this amendment does not meet the requirements of the third prong of the collateral order exception. To conclude otherwise would create an exception that swallows the rule, because if granting a motion to amend that destroys diversity fell within the collateral order doctrine, the very purpose of § 1447(d) would be frustrated, if not destroyed.

The only precedent dealing with changes in parties are *Tillman* and arguably *Mitchell*. In *Tillman*, the joinder did not immediately destroy jurisdiction; thus, our court ruled the joinder an unreviewable interlocutory order. *See Tillman*, 929 F.2d at 1028-29. In *Mitchell*, the separable order subjected to suit an otherwise immune party, *Mitchell*, 896 F.2d at 133, a situation analogous to the immunity precedent of the Supreme Court. Pretrial appeals are permitted to review immunity because it involves the right to be free from the burden of trial, not merely the right to be free from liability. *See Van Cauwenberghe*, 486 U.S. at 524-25 ("Because of the important interests furthered by the final-judgment rule ... and the ease with which certain pretrial claims for dismissal may be alleged to entail the right not to stand trial, we should examine the nature of the right asserted with special care to determine whether an essential aspect of the

44

claim is the right to be free of the burdens of a trial."). In this instance, the amendment-allowance merely affected the forum; it had nothing to do with Dr. Michalson's rights to be free from the burdens of trial.

As to the fourth consideration, whether the issue is too important to be denied review, we conclude that it does not counsel in favor of review. The only right at issue is Dr. Michalson's right to a federal forum. Obviously, § 1447(d) represents Congress' express determination that the right to a federal forum is not so significant that denial of that forum always merits review — just the opposite. Courts have consistently explained that "Congress immunized from all forms of appellate review any remand order issued on the grounds specified in § 1447(c), whether or not that order might be deemed erroneous by an appellate court". **Thermtron**, 423 U.S. at 351. In the light of that congressional policy determination, the issue of the amendment is not too important to be denied review.

"As its stringent requirements indicate, the collateral order doctrine is not to be applied liberally. Rather, the doctrine is extraordinarily limited in its application." **Ozee v. Am. Council on Gift Annuities, Inc.**, 110 F.3d 1082, 1091 (5th Cir.), (internal quotation marks omitted), *vacated on other grounds*, 522 U.S. 1011 (1997). Because the amendment, even though separable, fails to

45

meet the requirements of the collateral order exception, review is barred.

## C.

In challenging the constitutionality of the preclusion of appellate review, Dr. Michalson asserts:  § 1447(d) violates the separation of powers doctrine by usurping the power of the federal courts; and it raises due process and equal protection concerns. He grounds the latter claim in the fact that, if a district court *refuses* to remand a case, the party seeking remand can ultimately attain appellate review; however, if a district court *grants* remand, the party desiring a federal forum has no right to the procedural protection of appellate review.

## 1.

As a preliminary matter, Doleac maintains we should decline to consider this issue because it is raised for the first time on appeal.  Dr. Michalson replies that he did not have standing in district court to raise the constitutional challenge to § 1447(d) because, prior to remand, he had not yet sustained injury. Although we generally do not entertain issues not raised in, or decided by, the district court, we will do so "in extraordinary instances when such consideration is required to avoid a miscarriage of justice".  ***Bayou Liberty Ass'n, Inc. v. United States Army Corps of Eng'rs***, 217 F.3d 393, 398 (5th Cir. 2000).  We

46

will consider the issue; the issue could not be raised in the district court pre-remand.

2.

The roots of § 1447(d)'s preclusion of appellate review are in the Act of Mar. 3, 1887, 24 Stat. 552. *Thermtron*, 423 U.S. at 346. In the nearly 115 years since the limitation originated, its constitutionality has apparently never been challenged.

Dr. Michalson's claims are without merit. It is axiomatic that Congress has plenary authority to regulate the jurisdiction of the federal courts. *Kline v. Burke Constr. Co.*, 260 U.S. 226, 234 (1922) ("Every [] court [other than the Supreme Court] ... derives its jurisdiction wholly from the authority of Congress. That body may give, withhold or restrict such jurisdiction at its discretion, provided it be not extended beyond the boundaries fixed by the Constitution.... [T]he jurisdiction having been conferred may, at the will of Congress, be taken away in whole or in part"); *Sheldon v. Sill*, 49 U.S. 441, 449 (1850) ("Congress may withhold from any court of its creation jurisdiction of any of the enumerated controversies."); *Cary v. Curtis*, 44 U.S. 236, 245 (1845) ("Congress [] possess[es] the sole power of creating the tribunals (inferior to the Supreme Court) ... and of investing them with jurisdiction either limited, concurrent, or exclusive, and of withholding jurisdiction from them in the exact degrees and character which to Congress may seem proper for the public good.").

47

***United States v. Klein*** explicitly recognized: "If [Congress] simply denied the right of appeal in a particular class of cases, there could be no doubt that it must be regarded as an exercise of the power of Congress to make 'such exceptions from the appellate jurisdiction' as should seem to it expedient." 80 U.S. 128, 145 (1872).

3.

Furthermore, the Fifth Amendment confers no due process right to appellate review in a federal forum. The remand order affects only the procedural question as to the forum in which Dr. Michalson will seek to defend his interests, and "[n]o one has a vested right in any given mode of procedure". ***Crane v. Hahlo***, 258 U.S. 142, 147 (1922); *see* ***Olim v. Wakinekona***, 461 U.S. 238, 250 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."). There is no due process right to appellate review even in circumstances in which much more is at stake than a litigant's preference for a federal forum: even in criminal cases, appellate review does not constitute "a necessary element of due process of law". ***McKane v. Durston***, 153 U.S. 684, 687 (1894).[13]

---

[13]Contrary to Dr. Michalson's suggestion, ***Honda Motor Co., Ltd. v. Oberg***, 512 U.S. 415 (1994), did not create a due process right to appellate review: the provision of the Oregon Constitution that ***Oberg*** struck down did not merely restrict *appellate* review, but instead completely prohibited *judicial* review, including review by

Finally, because litigants who oppose remand are not a suspect class and § 1447(d) deprives them of no fundamental right, the statute need only be based in "a rational relationship between the disparity of treatment and some legitimate governmental purpose". *Heller v. Doe*, 509 U.S. 312, 320 (1993). *Thermtron* recognized Congress' purpose in enacting § 1447(d) as "prevent[ing] delay in the trial of remanded cases by protracted litigation of jurisdictional issues". *Thermtron*, 423 U.S. at 351. This reason forms a rational basis for the decision in that review of an order *denying* remand does not threaten to disrupt a pending state court decision, whereas providing review of an order *granting* remand does. The United States offers additional claimed rational reasons for this distinction, but we need not reach them. With even one rational reason supporting the distinction, Dr. Michalson fails to meet his burden of negating "every conceivable basis which might support" the distinction. *Heller*, 509 U.S. at 320.[14]

---

the trial court, of a jury's punitive damage award. *Id.* at 420 ("the question is whether the Due Process Clause requires judicial review of the amount of punitive damage awards"). Moreover, *Oberg* found denying protection against arbitrary deprivations of property abrogated well-established common law. *Id.* at 430. In contrast, appellate review of remand orders was unavailable until the Judiciary Act of 1875; and review of the grant of remand orders under § 1447(c) has been unavailable since 1887. *Thermtron*, 423 U.S. at 346.

[14]Doleac's request, pursuant to Federal Rule of Appellate Procedure 38, that Dr. Michalson be sanctioned for raising frivolous issues on appeal is without merit and, accordingly, is

III.

The district court's application of the *Hensgens* factors to allow the amendment joining GCI as a defendant was a separable order but did not come within the collateral order exception. Therefore, § 1447(d) bars our review of the remand and also of the amendment itself.  Such preclusion, based upon the dictates of § 1447(d), is not unconstitutional.  Because we lack jurisdiction to consider the appeal, it is

*DISMISSED.*

---

**DENIED.**