**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 00-11018**

_____

**IN RE B-727 AIRCRAFT SERIAL NO. 21010, Etc.; ET AL.,**

**Plaintiffs,**

**HASHEMITE KINGDOM OF JORDAN, ex rel. by and through His
Excellency Dr. Marwan Muasher, Ambassador and Chief of Mission to
the United States in his Official Capacity,**

**Plaintiff-Appellant,**

**versus**

**LAYALE ENTERPRISES, S.A.,**

**Appellee.**

_____

**Appeal from the United States District Court
for the Northern District of Texas**

_____

October 31, 2001

Before POLITZ and BARKSDALE, Circuit Judges, and FALLON, District

Judge[1].

RHESA HAWKINS BARKSDALE, Circuit Judge:

The primary issue at hand is whether an _in rem_ action brought

by an ambassador in a representative capacity constitutes an action

"against" that ambassador, so that a federal district court has

subject matter jurisdiction pursuant to 28 U.S.C. § 1351 ("original

jurisdiction, exclusive of the courts of the States, of all civil

_____

[1]District Judge of the Eastern District of Louisiana, sitting
by designation.

actions and proceedings against", *inter alia*, ambassadors).  For lack of such jurisdiction, the district court dismissed this *in rem* action, seeking declaratory and injunctive relief and brought by the Hashemite Kingdom of Jordan (Jordan), through its Ambassador. Jordan claims subject matter jurisdiction pursuant to § 1351, as well as on several other grounds.  **AFFIRMED**.

I.

In 1999, through its Ambassador, Jordan instituted this action with a "Complaint for Action In Rem", seeking declaratory and injunctive relief.  The complaint stated:  a Boeing 727-200 Aircraft, Serial No. 21010 (Aircraft), that had been sequestered by the Sheriff of Tarrant County, Texas, was subject to Jordan's immunity as a foreign sovereign; and any sequestration violated that sovereignty and must be dissolved.

A.

The complaint alleges the following:  In October 1992, Rifaat Al Assad of Syria, then owner of the Aircraft, had it transported to Jordan.  Al Assad is the father of the president of Layale Enterprises, S.A., a Panamanian company.  The Aircraft was registered in the Cayman Islands.  While the Aircraft remained in Jordan, Alia/The Royal Jordanian Airlines Corporation (Royal Jordanian), an entity wholly owned by Jordan, had several contacts with Layale's representatives concerning necessary repairs to the

2

Aircraft. Royal Jordanian also issued charges for fees and estimates for necessary repair and maintenance work.

After the Aircraft had been in Amman for two years, Jordanian officials estimated it would cost in excess of $2 million for service, repairs, accumulated rental charges, and other expenses to satisfy minimum airworthiness requirements. Soon after this estimate was made, Al Assad gifted the Aircraft to Jordan (around mid-1994).

Jordan ultimately conveyed the Aircraft to HRH Prince Talal bin Mohammed and HRH Princess Ghida Talal (the alleged owners). The alleged owners are members of Jordan's Royal Family and also are, and were at all relevant times, accredited diplomats to the United States. They planned to use the Aircraft for travel associated with their official duties as diplomats and members of the Royal Family.

In mid-1996, Jordan's Civil Aviation Authority issued to the alleged owners a temporary registration for the Aircraft. (Layale asserts that the Aircraft continues to be registered in the Cayman Islands and has never been deregistered.)

Several months earlier, in March 1996, the alleged owners entered into an "Operating Agreement" with Arab Wings Co. Amman. Arab Wings is a wholly owned subsidiary of Royal Jordanian. Therefore, Jordan owns Arab Wings through Royal Jordanian. The contract was renewed in April 1997. (The renewed contract is in the record; it expired a year later, in April 1998.)

3

In February 1996 (prior to entering into the March 1996 Operating Agreement with Arab Wings), the alleged owners had entered into a lease agreement with HMS Aviation concerning the Aircraft. (HMS Aviation, a Jordanian company, has offices in Jordan and England.)

Under the terms of that lease agreement, the alleged owners agreed to provide the Aircraft to HMS Aviation, and HMS Aviation in turn agreed to undertake certain enhancements and repairs on behalf of the alleged owners and operator. Pursuant to its lease, and in fulfillment of its agreement to renovate and refurbish the Aircraft, HMS Aviation brought the Aircraft to the United States for servicing at Meacham Field, Fort Worth, Texas.

In April 1997, while the Aircraft was located at Meachem Field, Layale initiated litigation in Texas state court in Tarrant County. Layale claimed ownership of the Aircraft and sought a judgment for title and possession. Jordan was not a named defendant. Layale obtained an *ex parte* writ of sequestration for the Aircraft on the basis of a $5,000 bond. The writ remains in effect.

HMS Aviation, the lessee, made a special appearance in the state court proceedings solely to contest personal jurisdiction. In May 1997, HMS Aviation removed the action to federal court based on claimed federal question jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all

4

civil actions arising under the Constitution, laws, or treaties of the United States."). In this regard, HMS Aviation asserted that Layale's complaint raised substantial federal questions relating to the conduct of foreign relations. Layale's motion to remand was granted that July. *Layale Enters., S.A. v. HMS Aviation*, No. 4:97-CV-390-A (N.D. Tex. 21 July 1997) (unpublished).

Almost a year later, in April 1998, the state court ruled: HMS Aviation was not subject to personal jurisdiction; but the court had *in rem* jurisdiction over the Aircraft. Therefore, the state court dismissed HMS Aviation but retained *in rem* jurisdiction. HMS Aviation filed an interlocutory appeal, contesting such jurisdiction.

That appeal was pending when, in August 1998, Jordan intervened to assert foreign sovereign immunity as an absolute jurisdictional bar to any judicial proceeding in the United States regarding the Aircraft operated by Jordan's wholly-owned instrumentality, Arab Wings, and owned by members of the Royal Family. Pursuant to 28 U.S.C. § 1441(d), Jordan immediately removed the case to federal court. That same day, it moved to dismiss, pursuant to Federal Rule of Civil Procedure 12, asserting: Layale's claims for title and possession were barred by sovereign immunity; and dismissal was mandated by the doctrines of Act of State and *forum non conveniens*. The motion was supported by: a declaration by Jordan's Ambassador to the United States; copies of

the Aircraft's Jordanian registration; and the agreements between the alleged owners, Arab Wings, and HMS Aviation, regarding the ownership, operation, and lease of the Aircraft.

In early 1999, the district court *sua sponte* remanded the case to state court, pursuant to 28 U.S.C. § 1447(c), ruling it lacked jurisdiction under 28 U.S.C. § 1330 (original jurisdiction for certain actions *against* foreign states; discussed *infra*) because: Layale's petition did not name Jordan as a party; and, therefore, the action was not "against" a sovereign. Jordan's Rule 59(e) motion was denied.

Jordan sought mandamus from our court and appealed. Mandamus was denied. *In Re Hashemite Kingdom of Jordan*, No. 99-10581 (5th Cir. 8 June 1999)(unpublished). And, in December 1999, pursuant to 28 U.S.C. § 1447(d), our court dismissed the appeal for lack of appellate jurisdiction. *Layale Enters., S.A. v. HMS Aviation*, No. 99-10632 (5th Cir. 3 Dec. 1999) (unpublished).

### B.

Shortly after the dismissal of its appeal, Jordan filed this action, making the above described allegations and giving notice to Layale as a potentially interested party. Layale responded by moving to dismiss for lack of subject matter jurisdiction and for failure to state a claim; and, in the alternative, Layale moved for abstention. It also moved to strike the affidavit of Jordan's Ambassador filed in support of the complaint.

6

In January 2000, Jordan entered a special appearance in the long pending state court action (filed in April 1997).  It did so in order to challenge subject matter jurisdiction.  The state court stayed that proceeding pending resolution of the jurisdictional issues in this federal action.

That August, the federal district court granted Layale's motion to dismiss this action for lack of subject matter jurisdiction.  It concluded:  neither the Declaratory Judgment Act, the Foreign Sovereign Immunities Act (FSIA), nor 28 U.S.C. § 1251, § 1330, or § 1351 provided federal subject matter jurisdiction.

II.

A district court dismissal for lack of subject matter jurisdiction is reviewed *de novo*.  *E.g.*, ***John G. & Marie Stella Kenedy Mem'l Found. v. Mauro***, 21 F.3d 667, 670 (5th Cir.), *cert. denied*, 513 U.S. 1016 (1994).  It goes without saying that federal courts are courts of limited jurisdiction.

Article III of the Constitution of the United States provides that "[t]he judicial Power ... shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish".  U.S. CONST. art. III, § 1.  "The judicial Power shall extend to all Cases, in Law and Equity, arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority; — [and] to [, *inter alia*,] all Cases affecting Ambassadors, other

7

public Ministers and Consuls." *Id.* § 2. "In all Cases [,*inter alia*,] affecting Ambassadors, other public Ministers and Consuls, ... the supreme Court shall have original Jurisdiction." *Id*.

It is more than well established that Congress has plenary authority to regulate federal court jurisdiction and can withhold such jurisdiction at its discretion. *See* **Doleac v. Michalson,** 264 F.3d 470, 492 (5th Cir. 2001); *see also* **Kline v. Burke Constr. Co.,** 260 U.S. 226, 234 (1922); **Cary v. Curtis,** 44 U.S. 236, 245 (1845). "Courts created by statute can have no jurisdiction but such as the statute confers." **Sheldon v. Sill**, 49 U.S. 441, 449 (1850). In short, there must be a statutory basis for the district court's jurisdiction over the claims asserted by Jordan.

Seeking a declaratory judgment is an appropriate mechanism for obtaining a determination of immunity. *See* FED. R. CIV. P. 57, adv. comm. note ("The existence or non-existence of any right, duty, ... or immunity ... may be declared."); *see also* **In the Matter of Rio Grande Trans., Inc.**, 516 F. Supp. 1155, 1157 (S.D.N.Y. 1981) (explaining that company filed claim for declaration it was immune, under provisions of FSIA, from jurisdiction of the state and federal courts of United States). On the other hand, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et. seq.,* does not provide a federal court with an independent basis for exercising subject-matter jurisdiction. *See* **Gaar v. Quirk**, 86 F.3d 451, 453 (5th Cir. 1996) ("A petition for a declaratory judgment concerning

8

federal law is not sufficient to create federal jurisdiction; hence, the relevant cause of action must arise under some other federal law." (internal quotation marks omitted)).

Likewise, as Jordan acknowledges, the FSIA, 28 U.S.C. § 1602 *et. seq.*, does not vest federal courts with subject matter jurisdiction by creating an independent cause of action. *See **Boxer v. Gottlieb***, 652 F. Supp. 1056, 1060 (S.D.N.Y. 1987) ("The [FSIA] was not intended to create a new federal cause of action; instead it provides access to the federal courts for the resolution of ordinary legal disputes involving a foreign sovereign."). Additionally, the related grant of jurisdiction found in 28 U.S.C. § 1330, discussed below, confers jurisdiction only over "any claim for relief *in personam*" that is against a foreign state, not over *in rem* actions.

Instead, the FSIA provides the sole basis for obtaining *in personam* jurisdiction over a foreign state. ***Argentine Republic v. Amerada Hess Shipping Corp.***, 488 U.S. 428, 443 (1989). In conjunction with the FSIA, federal courts have jurisdiction over civil actions *against* "a foreign state ... as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity under [28 U.S.C. §§] 1605-1607 ... or under any applicable international agreement", 28 U.S.C. § 1330(a), and "[p]ersonal jurisdiction over a foreign state ... as to every claim for relief over which the district courts have jurisdiction under

9

subsection (a) where service has been made under [28 U.S.C. §] 1608", 28 U.S.C. § 1330(b).  *See also* 28 U.S.C. § 1604 ("[A] foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in [28 U.S.C. §§] 1605 to 1607".).  "Thus, personal jurisdiction, like subject-matter jurisdiction, exists only when one of the exceptions to foreign sovereign immunity in §§ 1605-1607 applies".  ***Argentine Republic***, 488 U.S. at 435 n.3.

A "foreign state" includes "a political subdivision of a foreign state or an agency or instrumentality of a foreign state", defined as:

> any entity —
>
> (1) which is a separate legal person, corporate or otherwise, and
>
> (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
>
> (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country.

28 U.S.C. § 1603(b).  "[A]lthough a party claiming FSIA immunity retains the ultimate burden of persuasion on immunity, it need only present a prima facie case that it is a foreign state; and, if it does, the burden shifts to the party opposing immunity to present evidence that one of the exceptions to immunity applies".  ***Kelly v.***

10

*Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 847 (5th Cir.), *cert. denied*, 531 U.S. 979 (2000).

Needless to say, this case is quite unusual.  Examining the "interest" asserted by Jordan assists in deciding whether subject matter jurisdiction is lacking.

A.

Federal courts may only adjudicate actual cases or controversies.  U.S. CONST. art. III, § 2.  The Article III doctrine of standing exists, in part, to prevent a litigant from raising another's legal rights.  *See* **Allen v. Wright,** 468 U.S. 737, 750-51 (1984); **Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,** 454 U.S. 464, 474-75 (1982); *see also, e.g.,* **Lujan v. Defenders of Wildlife,** 504 U.S. 555, 560-61 (1992) (Standing requires an injury in fact, a causal connection between the injury and the defendant's conduct, and a likelihood that a judicial decision will redress the injury.).  A party seeking judicial review must show "more than an injury to a cognizable interest.  It requires that the party seeking review be himself among the injured".  **Sierra Club v. Morton,** 405 U.S. 727, 734-35 (1972).

In district court and here, Layale has claimed lack of standing, questioning what "interest" Jordan asserts in the Aircraft.  Layale maintains:  Jordan's only interest is in the Operating Agreement (between the alleged owners and Arab Wings);

11

and sovereign immunity does not attach to such an insignificant and attenuated interest, because such immunity does not apply to property the sovereign did not own, possess, or control at the time the court assumed jurisdiction over that property.

The interest Jordan is asserting is not made clear by its briefs or complaint, which repeatedly make statements such as "Layale has asserted a title interest in the Aircraft in which [Jordan] holds a sovereign interest". It appears that the sovereign interest at issue is that embodied in the Operating Agreement. At oral argument, when asked whether the interest Jordan asserts is that in the Operating Agreement, Jordan's counsel stated it was. And, in its briefs, Jordan characterizes Layale's position as being that Jordan cannot have a sovereign interest apart from an interest in title. Jordan does not maintain that it is asserting the alleged owners' title and ownership interest: "[T]he FSIA provides immunity to a foreign state to protect its interests (*i.e.*[,] the integrity of its sovereignty) and is not limited to asserting mere title interests".

Jordan asserts: its interest in the Aircraft is precisely the question, that by claiming immunity, it seeks to avoid litigating; and deciding its interest would reach the merits of the case. Layale counters that a mere assertion that integrity of a sovereign is at issue, *without more*, is insufficient to create immunity. Although the alleged interest in the Operating Agreement may be

12

"more", at issue is whether, if it is, the alleged interest rises to the level of "property" sufficient to create foreign sovereign immunity under § 1609.[2]

In any event, we need not decide standing *vel non*. A more certain resolution lies through the issue of subject matter jurisdiction.

B.

Jordan presents several alternative bases for subject matter jurisdiction. Each fails.

---

[2]The provision under which Jordan claims immunity, 28 U.S.C. § 1609, provides:

> Subject to existing international agreements to which the United States is a party at the time of enactment of this Act the property in the United States of a foreign state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611 of this chapter.

28 U.S.C. § 1609. Our research has revealed *no* cases defining "property" as used in § 1609. Although the legislative history of § 1605 of the FSIA explains that "arrest or attachment must, under section 1609, be immediately dissolved when the foreign state brings to the court's attention its interest in the vessel or cargo and, hence, its right to immunity from arrest", H.R. REP. No. 94-1487, at 21-23 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6620-21 (interpreting FSIA §§ 1609 and 1605(b)), the only "interest" mentioned in that paragraph is that of ownership. **Id.** ("vessels or cargo of a foreign state", "the ownership of the vessel in question", "foreign state's ownership"). And, the legislative history of § 1609 mentions only "the property of a foreign state", "foreign government property", "property of a foreign sovereign", and "foreign government assets". **Id**. at 6625-26.

13

1.

The first basis claimed is 28 U.S.C. § 1251. That section provides, *inter alia*:

> (b) The Supreme Court shall have original but not exclusive jurisdiction of:
>
> (1) All actions or proceedings to which ambassadors, other public ministers, consuls, or vice consuls of foreign states are parties[.]

28 U.S.C. § 1251(b). This is in contrast to subpart (a), which vests the Supreme Court with "original and exclusive jurisdiction of all controversies between two or more States". *Id*. (a).

The 1948 revisions, codified as § 1251, provided, in subsection (a)(2), for exclusive jurisdiction in the Supreme Court over actions *brought against* ambassadors and ministers; in subsection (b)(1), for original, but not exclusive, jurisdiction in the Supreme Court over actions *brought by* such ambassadors and ministers and *to which* consuls were parties. 28 U.S.C.A. § 1251 note (1993) (Revision Notes and Legislative Reports; 1948 Acts). The 1978 amendments to § 1251 struck subsection (a)(2) and replaced the "brought by" language in subsection (b)(1) with "to which ambassadors ... are parties" (the current language). *See* 28 U.S.C.A. § 1251 note (1993) (Revision Notes and Legislative Reports; 1978 Amendments).

The purpose of that revision was to allow district courts to exercise concurrent jurisdiction "in those instances where foreign

14

ambassadors, members of diplomatic missions, or members of their families will be subject to suit in the courts of the United States".  S. REP. NO. 95-1108, at 6 (1978), *reprinted in* 1978 U.S.C.C.A.N. 1935, 1946 (interpreting § 1251).  In sum, the 1978 revisions did not alter the Supreme Court's jurisdiction but merely allowed for non-exclusive jurisdiction over actions involving ambassadors, ministers, and consuls of foreign nations.

Therefore, § 1251 addresses only the Supreme Court's original jurisdiction.  It does not, by implication, confer subject matter jurisdiction on a federal district court.  *See **Ohio v. Wyandotte Chems. Corp.,*** 401 U.S. 493, 499 n.3 (1971) (noting § 1251(b) did not confer jurisdiction on district courts and stating that another statute *must* provide the basis for jurisdiction in such cases).

Along this line, and as discussed in the earlier referenced 1948 Acts note to § 1251, a more specific provision regarding the original jurisdiction of district courts over civil actions in which foreign officials are parties is found in 28 U.S.C. § 1351. *See* 28 U.S.C.A. § 1251 note (Revision Notes and Legislative Reports; 1948 Acts) ("Section 1351 of this title gives to United States district courts, exclusive of the courts of the States, jurisdiction of civil actions against such consuls and vice consuls.").

2.

Accordingly, Jordan also seeks shelter under the above referenced § 1351.  It provides:

15

> The district courts shall have original
> jurisdiction, exclusive of the courts of the
> States, of all civil actions and proceedings
> *against* – ... members of a mission.

28 U.S.C. § 1351 (emphasis added). Layale does not contest that Jordan's Ambassador, who brings this action on behalf of Jordan, is the head of a mission.

a.

Whether Jordan is correct that an action can be "against" an ambassador if he brings it in a "defensive" position is discussed *infra* in part II.B.2.b. In any event, § 1351 appears to contemplate an action involving an ambassador in his individual, *not representative*, capacity. Likewise, our research reveals no cases considering § 1351 in which an ambassador was a party only in a representative capacity.

It seems inconceivable that Congress intended § 1351 to apply to declaratory actions brought by an ambassador in a representative capacity. "It has long been the law that the consular agents of nations are to be accorded the right to appear in our courts to protect their nationals and their nationals' property"; their role is not limited to protecting the rights of foreign sovereigns. *The Maret*, 145 F.2d 431, 438 (3d Cir. 1944) (citing *The Bello Corrunes: The Spanish Consul, Claimant*, 19 U.S. (6 Wheat.) 152 (1821)). Were we to hold that § 1351's jurisdiction extends, as Jordan contends, to cover a declaratory action brought by an ambassador in a representative capacity, then an ambassador suing to protect the

16

rights of a national might automatically be able to remove the case to federal court.

No relief "against" the Ambassador is sought in either this action or the underlying state-court proceeding. Whatever interest of Jordan in the Aircraft may be at issue, it is not an interest held by Jordan's Ambassador. Therefore, jurisdiction is also lacking under § 1351.

b.

One point highlighted by the district court was that this *in rem* action was brought *by*, rather than *against*, the Ambassador. Based on our conclusion that the district court lacks jurisdiction because the Ambassador brought the action in his representative capacity, we need *not* further analyze jurisdiction under § 1351. In the alternative, and because the parties focused on the definition of "against", we address it.

Jordan claims § 1351 "makes clear that a party need not be a defendant for a case to be 'against' it". The plain language of § 1351 does not make this clear; far from it. *See* 28 U.S.C. § 1351 ("all civil actions and proceedings *against* – ... members of a mission" (emphasis added)). And the case law to which Jordan analogizes its position is largely unhelpful.

Jordan asserts that, "in *Leiter* [*Minerals, Inc. v. United States*, 352 U.S. 220 (1957)], the Supreme Court held that a sovereign may file its own federal *in rem* action to adjudicate its

17

rights in property when it acts in a defensive posture, even though a state court proceeding initiated prior to the federal action was pending.... The sovereign defensive position that the Supreme Court acknowledged in *Leiter* to protect the federal government's 'superior federal interests' logically extends to foreign sovereigns such as [Jordan]".

In *Leiter*, the United States brought an action *in rem* to obtain federal declaratory relief regarding its title to mineral rights. *Leiter*, 352 U.S. at 228. Leiter Minerals had previously brought an action in state court against mineral lessees of the United States seeking to be declared owner of mineral rights under land owned by the United States. *Id.* at 221. Similar to Layale's not suing Jordan in the pending state court action, Leiter Minerals did not name the United States as a defendant. *Id.* at 222. The United States then brought a federal declaratory action against Leiter and others to quiet title in the mineral rights and for a preliminary injunction restraining Leiter from prosecuting its action in state court. *Id.* at 223.

At issue on appeal was the application of the Anti-Injunction Act, 28 U.S.C. § 2283; the Supreme Court affirmed the injunction granted by the district court. *Id.* at 224. The holding of *Leiter* is that the Anti-Injunction Act does not apply to suits brought by the United States. *Id.* at 225-26 ("The frustration of superior federal interests that would ensue from precluding the Federal

18

Government from obtaining a stay of state court proceedings except under the severe restrictions of 28 U.S.C. § 2283 ... would be so great that we cannot reasonably impute such a purpose to Congress from the general language of 28 U.S.C. § 2283 ... alone."). Central to the decision was that only a federal court could determine the title of the United States to the mineral rights. *Id.* at 226 (citing 28 U.S.C. § 1345 and *United States v. Lee*, 106 U.S. 196 (1882)).

The Court did state that, in attempting to protect its property rights, "the position of the United States is essentially a *defensive* one [and therefore] it should be permitted to choose the forum in th[e] case, even though the state litigation has the elements of an action characterized as *quasi in rem*". *Id.* at 228 (emphasis added). The Court made that statement, however, only in passing and as part of its conclusion that the injunction had been properly granted. *Id*. at 226-28. Any extension of the "*Leiter* doctrine" has involved the application of the Anti-Injunction Act or another instance in which the federal government was found "more justified in seeking a federal forum than a private litigant". *United States v. Commonwealth of Pa., Dep't of Envtl. Res.*, 923 F.2d 1071, 1078 (3d Cir. 1991).[3]   Jordan has asserted the *Leiter*

[3]For example, concerning the Anti-Injunction Act, the Supreme Court extended the holding of *Leiter* to exempt actions brought by federal government agencies from the prohibition against injunctive relief. *NLRB v. Nash-Finch Co.*, 404 U.S. 138, 146-47 (1971). As another example, several circuit courts have extended the *Leiter*

19

doctrine applies to this action.  But neither *Leiter* nor any of the extensions had anything to do with the definition of "against" as used in § 1351.  It is true that, to a certain extent, any party that brings a declaratory action seeking to protect its interests can be said to sue in a "defensive" posture.  This, however, does not necessarily satisfy a statutory requirement that a proceeding be "against" that party.  Even assuming Jordan is in a defensive posture in this declaratory action, § 1351's "against" requirement has not been met.

3.

As discussed *supra*, the FSIA does not create jurisdiction. Jordan acknowledges this, yet asserts that "the FSIA, as well as the federal common law of foreign relations, present the court with cognizable federal questions for which subject matter jurisdiction is conferred by 28 U.S.C. § 1331 for cases or controversies arising under the laws of the United States".

a.

---

exception to cases in which the United States is a party asserting a public interest other than federal title to property. *See, e.g.,* *Machesky v. Bizzell*, 414 F.2d 283, 290-91 (5th Cir. 1969) (holding public interest in First Amendment even greater than that in United States' property rights, therefore extending *Leiter* to hold that "where important public rights to full dissemination of expression on public issues are abridged by state court proceedings, the principles of comity embodied in § 2283 must yield"); *United States v. Wood*, 295 F.2d 772, 779 (5th Cir. 1961) (extending *Leiter* to hold Anti-Injunction Act inapplicable when United States sues on behalf of class of private citizens asserting highest public interest (voting rights) and seeks to enjoin state criminal proceedings), *cert. denied*, 369 U.S. 850 (1962).

20

Concerning the FSIA, Jordan points to 28 U.S.C. § 1609, quoted in note 2, *supra*.  Again, that section states:

> Subject to existing international agreements to which the United States is a party at the time of enactment of this Act the property in the United States of a foreign state *shall be immune* from attachment arrest and execution except as provided in sections 1610 and 1611 of this chapter.

28 U.S.C. § 1609 (emphasis added).  The right to be free from attachment, however, concerns FSIA immunity (28 U.S.C. §§ 1602-1611) and is not an independent cause of action that would fall under § 1331 (federal question).[4]

b.

Jordan's claim that a § 1331 federal question arises out of the "federal common law of foreign relations"  appears to be quite similar to, if not the same as, that made in 1997 by HMS Aviation as the basis for its unsuccessful removal of the Layale state court action to federal court.  There, claiming § 1331 jurisdiction, HMS Aviation presented this point as the requisite federal question. *See supra* at 4-5.

Jordan did not, however, raise this issue in district court. It goes without saying that this point should have been first presented there, so that it could have been properly and completely developed.  For example, factual development may have been

---

[4]We need not reach Layale's contention that sequestration of property does not fall under § 1609.

necessary.  It is far too late in the day to raise this point. Therefore, we decline to address this issue for the first time on appeal.  *See, e.g.,* **Agrilectric Power Partners, Ltd. v. Entergy Gulf States, Inc.,** 207 F.3d 301, 304 n.7 (5th Cir. 2000); *cf.* **Doleac**, 264 F.3d at 492 (we will entertain legal issues raised for the first time on appeal "in extraordinary instances ... to avoid a miscarriage of justice" (*quoting* **Bayou Liberty Ass'n, Inc. v. United States Army Corps of Eng'rs,** 217 F.3d 393, 398 (5th Cir. 2000))).

III.

For the foregoing reasons, the dismissal of this action is

**AFFIRMED.**