**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**March 8, 2004**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 02-41766

PEOPLES NATIONAL BANK, A National Banking Association,

Plaintiff-Appellant

VERSUS

OFFICE OF THE COMPTROLLER OF THE CURRENCY OF THE UNITED STATES,
and JOHN D. HAWKE, JR., COMPTROLLER OF THE CURRENCY,

Defendants-Appellees.

Appeal from the United States District Court
For the Eastern District of Texas

Before EMILIO M. GARZA, DENNIS, Circuit Judges, and DUPLANTIER,[*]
District Judge.

DENNIS, Circuit Judge:

Peoples National Bank appeals from an order of the district court granting defendants' motion to dismiss for lack of subject matter jurisdiction.  We affirm.

---

[*] Senior District Judge of the Eastern District of Louisiana, sitting by designation.

-1-

## I.  BACKGROUND

Peoples National Bank ("PNB") is a nationally-chartered bank located in Paris, Texas.  It is subject to supervision by the Office of the Comptroller of the Currency ("OCC"), a bureau of the Department of the Treasury.

On February 24, 2001, PNB began making small, short-term consumer loans commonly referred to as "payday loans." PNB entered into Marketing and Servicing Agreements with subsidiaries of Advance America, Cash Advance Centers, Inc., under which Advance America agreed to market and service the payday loans as PNB's agent.  In April 2001, the OCC began a regularly-scheduled exam of PNB.  The OCC ultimately notified PNB that its examination rating would be unsatisfactory due to PNB's practice of engaging in payday loan transactions.  The OCC also advised PNB that it intended to initiate an enforcement action against PNB, primarily because of PNB's practice of making payday loans.

PNB then informed the OCC Ombudsman that the bank intended to appeal the examination rating by utilizing the procedures set forth in Banking Bulletin 96-18 ("BB 96-18").  The Ombudsman advised PNB that newly-issued Banking Bulletin 2002-9 ("BB 2002-9") would apply rather than BB 96-18.  Like BB 96-18, BB 2002-9 provides that a national bank may seek review of "examination ratings" but that "[a] national bank may not appeal to the ombudsman or to its immediate OCC supervisory office ... [a]ny formal enforcement-

-2-

related actions or decisions." But BB 2002-9 added Footnote 2 which provides that "a formal enforcement-related action or decision includes the underlying facts that form the basis of a recommended or pending formal enforcement action ... and OCC determinations regarding compliance with an existing formal enforcement action." Thus, under BB 2002-9, PNB can appeal its examination rating to the Ombudsman, but the Ombudsman's review will not encompass a review of the facts that form the basis of a recommended or pending enforcement action or OCC determinations regarding compliance with an existing formal enforcement action.

An exchange of letters ensued between PNB and the Ombudsman in which the Ombudsman indicated his willingness to hear PNB's appeal of its examination rating but reaffirmed that the appeal would be governed by BB 2002-9. PNB took no further action to seek intra-agency review of the examination rating but instead filed this suit in federal court on March 15, 2002, seeking injunctive and declaratory relief against the Office of the Comptroller of the Currency and John D. Hawke, Jr., Comptroller of the Currency. PNB argues that the defendants violated 12 U.S.C. § 4806[1] as well as PNB's procedural due process rights by enacting BB 2002-9. The OCC actually commenced its administrative enforcement action against

_____

[1] This statute mandates that "each appropriate Federal banking agency ... shall establish an independent intra-agency appellate process." The statute further provides that the appellate process "shall be available to review material supervisory determinations," which include examination ratings.

PNB on March 18, 2002, by filing a "Notice of Charges for Issuance of a Cease and Desist Order Against PNB."

OCC and Hawke moved to dismiss PNB's complaint in the district court, contending that the district court lacked subject matter jurisdiction. The district court granted the motion. The court noted the prohibition of 12 U.S.C. § 1818(i)(1), which states that "no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement" of a cease and desist order. The district court concluded that PNB was essentially attempting to obtain review of the OCC's proposed enforcement action and that section 1818(i)(1) thus stripped the court of jurisdiction. Additionally, the district court stated that there had been no final agency action that could be subject to judicial review under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*.

After PNB timely appealed, it entered into a consent order with the OCC. Pursuant to the consent order, PNB agreed to end its payday lending arrangement and to pay a civil penalty of $175,000. PNB asserts that this consent order constitutes a settlement and termination of the enforcement action. The OCC argues that the enforcement action still exists. Either way, this appeal is not moot. PNB still intends to appeal its examination rating, and PNB's challenge to the implementation of BB 2002-9 still exists.

If the enforcement action has terminated, section 1818(i)(1) would no longer preclude jurisdiction. But the question of whether

or not this jurisdictional bar has been removed is only of import if there is a valid basis upon which the district court could have asserted jurisdiction in the first place. We conclude that there is not a valid basis for jurisdiction, and we affirm the district court's dismissal.

## II. ANALYSIS

### A. Standard of Review

This court reviews a district court's dismissal based on lack of subject matter jurisdiction *de novo*. *Hashemite Kingdom of Jordan v. Layale Enterp., S.A.*, 272 F.3d 264, 269 (5th Cir. 2001).

Federal courts are courts of limited jurisdiction. *Id.* at 269. As courts created by statute, they have no jurisdiction absent jurisdiction conferred by statute. *Id.* at 270. Thus, there must be a statutory basis for federal court jurisdiction over PNB's claims. The party claiming federal subject matter jurisdiction has the burden of proving it exists. *Pettinelli v. Danzig*, 644 F.2d 1160, 1162 (5th Cir. 1981).

### B. Subject Matter Jurisdiction

PNB alleges that jurisdiction can be based upon the APA and on the OCC's alleged violation of 12 U.S.C. § 4806. The APA provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. Thus, a federal court may review an administrative agency decision if (1) the

-5-

decision is made reviewable by statute or (2) there has been a final agency action for which there is no other adequate remedy in a court.[2]

As a starting point, section 4806 does not directly provide for judicial review. Since the relevant administrative agency statutory provision here does not directly provide for judicial review, the APA authorizes judicial review only of "final" agency action. If there is no "final agency action," a federal court lacks subject matter jurisdiction. *American Airlines, Inc. v. Herman*, 176 F.3d 283, 287 (5th Cir. 1999). PNB argues that the implementation of BB 2002-9 constitutes final agency action by the OCC.

As a general matter, two conditions must be satisfied for an agency action to be final: 1) the action must mark the consummation of the agency's decision-making process; 2) the action must be one by which rights or obligations have been determined or from which legal consequences will flow. *American Airlines*, 176 F.3d at 287-88 (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 149-50 (1967)). Conversely, a non-final agency order is one that "does not of itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative

---

[2] At one point in its brief, PNB indicates specifically that it believes jurisdiction is conferred by section 706 of the APA. But it is well-established that section 706 is not an independent grant of subject matter jurisdiction. *Your Home Visiting Nurse Srvs., Inc. v. Shalala*, 525 U.S. 449, 457-58 (1999).

action." *Rochester Tel. Corp. v. United States*, 307 U.S. 125, 130 (1939). The APA also states that a "preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." 5 U.S.C. § 704.

There has been no final agency action in this case. The agency's decision-making process has not been consummated. PNB has not utilized the procedure for appeal to the Ombudsman. The letters from the Ombudsman to PNB indicate that the Ombudsman is prepared to hear PNB's appeal; PNB simply takes issue with the idea that such appeal will be governed by BB 2002-9. BB 2002-9 may place a limitation on the scope of review to be applied by the Ombudsman. But this affects PNB's rights adversely only "on the contingency of future administrative action," that being the possibility that the Ombudsman will continue to view BB 2002-9 as a limitation on the scope of review and that the Ombudsman will rule against PNB. This intra-agency procedural rule should not be reviewed by a court until it has been utilized and resulted in a final agency action, in this case a ruling by the Ombudsman. If PNB were to pursue its appeal to the Ombudsman, it is possible that the Ombudsman would no longer view BB 2002-9 as limiting the scope of review or that PNB would prevail in its appeal, thereby mooting any potential judicial challenge. This indicates that PNB should pursue its administrative appeal, not shortcut it by filing suit.

*American Airlines*, 176 F.3d at 292.

Again, section 704 of the APA provides that any "preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." Thus, the time to challenge the appeals process is after there is a final agency action. Because PNB has elected not to pursue the agency appeal procedure provided for by BB 2002-9, PNB cannot now complain that BB 2002-9 denied it a meaningful review in violation of 12 U.S.C. § 4806. The time to make that argument is after the appeals process in question has been utilized, resulting in a final agency action.

### III. CONCLUSION

The district court's dismissal for lack of subject matter jurisdiction is **AFFIRMED.**[3]

---

[3] In its reply brief, PNB attached five documents as exhibits. None of these documents were included in the record before the district court. One document is a press release lauding PNB as one of the top-performing banks in Texas according to the Independent Bankers Association of Texas. The other four are e-mails from various OCC employees. PNB contends these e-mails demonstrate the OCC's unfair treatment of the bank because of PNB's participation in payday loans.

The OCC has moved to strike these five documents because they were not part of the record before the district court and because PNB did not seek leave of this court before supplementing the record. PNB opposes that motion and has moved to supplement the record contending that these documents are relevant.

"Although a court of appeals will not ordinarily enlarge the record to include material not before the district court, it is clear that the authority to do so exists." *Gibson v. Blackburn*, 744 F.2d 403, 405 n.3 (5th Cir. 1984). These documents are not relevant to the disposition of this case. Thus, PNB's motion to supplement the record is denied, and the OCC's motion to strike is

denied as moot.